UNITED STATES of America, Plaintiff-Appellee,

v.

30.64 ACRES OF LAND, MORE OR LESS, SITUATED IN KLICKITAT COUNTY, STATE OF WASHINGTON, Defendant,

and

James Starr, Defendant-Appellant.

No. 84–3928.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 8, 1986.

Decided July 28, 1986.

Arthur E. Gowran, Jacques B. Gelin, Washington, D.C., for plaintiff-appellee.

Susan L. Hahn, Schwab, Jurtz & Hurley, Yakima, Wash., for defendant-appellant.

Before WRIGHT, CANBY and WIGGINS, Circuit Judges.

WIGGINS, Circuit Judge:

Appellant James Starr appeals from a jury verdict awarding him $3676.80 in compensation for the condemnation of some 30.64 acres of his 215-acre tract at the mouth of the Klickitat river above the Bonneville Dam. Because we conclude that the district court committed errors of law in denying his motion for counsel and in failing to consider the propriety of appointing a guardian ad litem, we reverse and remand.

## FACTS

The United States filed a complaint against Starr on November 26, 1974, to establish just compensation for 30.64 acres of Starr's land taken by the government as added flowage easement for the Bonneville Dam. Although represented by counsel at times during the pendency of the action, Starr appeared *pro se* at the first trial in 1981. The jury awarded him $22,240.00, the government appealed, and this court overturned the award as unsupported by the evidence and remanded for a new trial. *United States v. 30.64 Acres of Land,* 707 F.2d 520 (9th Cir.1983) (Mem.).

Before the new trial, Starr, again *pro se,* moved for appointment of counsel on the ground that he was "incapable of protecting himself in the forthcoming Trial [sic]." Attached to Starr's motion was a detailed Social Security Administration (SSA) report

finding him totally physically and mentally disabled under SSA regulations.

The government's response to Starr's motion noted that the court had the authority to appoint counsel, both under 28 U.S.C. § 1915 and by virtue of its general power to insure the administration of justice. The government noted that Starr had not filed the affidavit of indigency required by section 1915 and suggested that the court point out to him the requirements of the section to allow him to do so.

The government also acknowledged the SSA report finding Starr totally mentally disabled and suggested to the court that this condition might require it to appoint a guardian ad litem for Starr under Fed.R. Civ.P. 17(c). The government advised the court that in the government's opinion appointment of a guardian ad litem was within the court's discretion, and that in view of the preliminary showing, the court should inquire into Starr's condition.

The court did not inform Starr of the requirements of section 1915 for appointment of counsel or inquire in any way into Starr's mental competence. It denied the motion for appointment of counsel without explanation. Starr renewed his motion both before and during the trial. In the latter instance, the court commented, "I know nothing in this case that allows this Court to appoint an appraiser or an attorney for you, and that's the problem." The jury returned a verdict of $3676.80 for Starr. Judgment was entered, and Starr timely appealed, now represented by counsel.

## JURISDICTION

This is an appeal from a final judgment in a United States district court, properly before this court under 28 U.S.C. § 1291 (1982). Although the notice of appeal was filed June 20, 1984 and judgment on the verdict was not entered until September 6, 1984, the notice of appeal followed the announcement of the decision in the case (the May 1 verdict) and so is timely under Fed. R.App.P. 4(a)(2).

## I.

## DESIGNATION OF COUNSEL

### A. Standard of Review

Designation of counsel under 28 U.S.C. § 1915(d) is ordinarily at the discretion of the trial court and can only be overturned for abuse of that discretion. *See United States ex rel. Gardner v. Madden*, 352 F.2d 792, 793 (9th Cir.1965). Appellant here argues, however, that the district court based its denial on its erroneous belief that it lacked the statutory power to grant the motion. This alleges an error of law, reviewable *de novo* by this court. *See United States v. McConney*, 728 F.2d 1195, 1201 (9th Cir.) (en banc), *cert. denied,* —— U.S. ——, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

### B. Motion for Representation by Counsel

Starr argues that the trial court denied his motion for appointment of counsel on the mistaken ground that the court lacked authority to grant it. He argues that the court's comment, "I know nothing in this case that allows this Court to appoint an appraiser or an attorney for you, and that's the problem," shows that the court thought it lacked the power to secure counsel for him.

Such a conclusion by the court suggests that it misconceived its authority. A district court has the power to secure counsel for indigent plaintiffs under 28 U.S.C. § 1915(d) (1982), which provides:

> The court may request an attorney to represent any such person [proceeding in forma pauperis] unable to employ counsel and may dismiss the case if the allegation of poverty is untrue, or if satisfied that the action is frivolous or malicious.

This provision clearly gives courts the power to secure counsel for indigent civil litigants, but the nature of the power has been treated differently by different courts. Some courts have taken the language of the statute at its word and held that courts may request but not compel

representation of indigents in civil cases.[1] Other courts have read the statute more broadly and have apparently required attorneys to represent indigents without compensation.[2] Some courts use the term "appointment" casually and affirm or reverse trial court denials of section 1915(d) motions without considering the distinction between a request and an appointment.[3] Still other courts use the terms "request" and "appoint" interchangeably, ignoring any distinction between them.[4]

Several factors account for this confusion. Most obviously, federal courts are in the habit of using the language of mandatory appointment of counsel. Because the overwhelming majority of motions for counsel in federal courts properly request "appointment" of counsel,[5] courts naturally fall into using "appointment" language without considering whether it is appropriate.

The rarity of a successful section 1915(d) motion also contributes to the confusion. A district court will secure counsel for an indigent civil litigant under section 1915(d) only under "exceptional circumstances," see, e.g., Aldabe v. Aldabe, 616 F.2d 1089,

1. See, e.g., Heidelberg v. Hammer, 577 F.2d 429, 431 (7th Cir.1978); Gray v. Wisconsin Department of Health, 495 F.Supp. 321, 322 (E.D.Wis. 1980) (court denied motion to "appoint" counsel because it had no power to do so; it had only the power to "request," which it declined to exercise); Turner v. Steward, 497 F.Supp. 557, 558 (E.D.Ky.1980); cf. Chapman v. Kleindienst, 507 F.2d 1246, 1250 (7th Cir.1974) (directing trial court to make necessary request of willing volunteer attorney).

2. See, e.g., Peterson v. Nadler, 452 F.2d 754, 757 (8th Cir.1971); see also Tyler v. Lark, 472 F.2d 1077, 1078–80 (8th Cir.) (counsel appointed to prosecute 42 U.S.C. § 1983 action may be compelled to serve without compensation), cert. denied, 414 U.S. 864, 94 S.Ct. 114, 38 L.Ed.2d 84 (1973).

3. See, e.g., Lopez v. Reyes, 692 F.2d 15, 17 (5th Cir.1982); Randle v. Victor Welding Supply Co., 664 F.2d 1064, 1064–65 (7th Cir.1981); Maclin v. Freake, 650 F.2d 885, 886–89 (7th Cir.1981); Cook v. Bounds, 518 F.2d 779, 780 (4th Cir. 1975); Bethea v. Crouse, 417 F.2d 504, 505 (10th Cir.1969); Moss v. Thomas, 299 F.2d 729, 730 (6th Cir.1962).

4. McKeever v. Israel, 689 F.2d 1315, 1319 & n. 9 (7th Cir.1982) (discussing the interchangeability). This interchangeability is evident in language such as that found in Ehrlich v. Van Epps, 428 F.2d 363, 364 (7th Cir.1970):

Although 28 U.S.C. § 1915(d) authorizes the court to request an attorney to represent any person unable to employ counsel, the court is not required to do so in a civil case. [citations omitted]. Based on an examination of the entire record in this case, we conclude that the district court was well within its discretion in denying appellant's motion to have an attorney appointed to advise him. (Emphasis added).

See also Knoll v. Socony Mobil Oil Co., 369 F.2d 425, 430 (10th Cir.1966) ("The Court may request an attorney, but the appointment of counsel in a civil case is a privilege and not a right." (footnote omitted)), cert. denied, 386 U.S. 977, 87 S.Ct. 1173, 18 L.Ed.2d 138 (1967); Ferguson v. Fleck, 480 F.Supp. 219, 222 (W.D.Mo.1979); Willett v. Wells, 469 F.Supp. 748, 751 (E.D.Tenn. 1977), aff'd, 595 F.2d 1227 (6th Cir.1979) (mem.); United States v. Decker, 344 F.Supp. 519, 520 (W.D.Ky.1972).

5. Courts most frequently receive motions for counsel in criminal cases, in which the right to counsel is guaranteed under the sixth amendment, see, e.g., Johnson v. Zerbst, 304 U.S. 458, 462, 58 S.Ct. 1019, 1022, 82 L.Ed. 1461 (1938), and appointment and compensation of counsel are specifically authorized by statute. See 18 U.S.C. § 3006A (1982).

Federal courts also frequently receive motions for counsel in actions for habeas corpus and other postconviction relief. See, e.g., 28 U.S.C. §§ 2241, 2254 and 2255 (1982). Although such actions are technically civil, discretionary appointment of counsel for such suits is specifically authorized by the Criminal Justice Act, 18 U.S.C. § 3006A(g) (1982), because of the suits' close relation to criminal proceedings. See also McClain v. Manson, 343 F.Supp. 382, 383 (D.Conn.1972) (counsel appointed under 18 U.S.C. 3006A to prosecute a 42 U.S.C. § 1983 action that was essentially habeas corpus in nature).

Another source of motions for counsel in federal courts is Title VII of the Civil Rights Act of 1964. 42 U.S.C. § 2000e-5(f)(1) provides for the appointment of counsel in employment discrimination cases under appropriate circumstances. The legislative history of this Act makes clear that Congress thought it important that civil rights litigants with meritorious cases not be deprived of their legal rights by an inability to afford counsel. See, e.g., Bradshaw v. Zoological Society of San Diego, 662 F.2d 1301, 1317 (9th Cir.1981).

Finally, and much less frequently, courts receive motions for counsel in civil cases under 28 U.S.C. § 1915(d) like the one involved here.

1093 (9th Cir.1980), so grants of such a motion are relatively rare. In addition, the district court is given considerable discretion in determining whether counsel is necessary, so appellate reversal of trial court denials is also rare. As a result, courts at both levels often have little incentive to choose their language carefully in ruling on section 1915(d) motions; it little matters to a litigant who is denied counsel whether the court declines to "appoint" an attorney or merely declines to "request" an attorney to serve.

Finally, some of the confusion undoubtedly arises because courts use the word "appoint" in two different senses. As it is used in this opinion, "to appoint" means to order an attorney to represent an indigent client, whether with or without compensation. Many courts, however, including our own, also use the word "appoint" to designate a *pro bono* volunteer attorney as counsel of record for an indigent client. Thus, courts often issue orders "appointing" counsel when the attorney has in fact volunteered to serve or been requested to serve by the court and agreed to do so. Courts are often aware of local attorneys willing to take on *pro bono* cases and use such orders to put the attorney-client relationship on a more formal footing.[6]

The difference between requesting counsel to serve and appointing counsel to serve is significant. As the terms are commonly understood, an attorney may decline a request but not an appointment.[7] *See, e.g., Powell v. Alabama,* 287 U.S. 45, 73, 53 S.Ct. 55, 65, 77 L.Ed. 158 (1932). Where no provision is made for government payment of appointed attorneys, therefore, "appointment" has the potential of working hardship on attorneys. This is especially so because the cases justifying representation under section 1915(d) by their nature involve "exceptional circumstances," *see, e.g., Wilborn v. Escalderon,* 789 F.2d 1328, 1331 (9th Cir.1986); *Aldabe,* 616 F.2d at 1093; *Gardner,* 352 F.2d at 794,[8] that often require exceptional amounts of time and attention from attorneys.

■ Courts have long recognized that attorneys, because of their profession, owe some duty to the court and to the public to serve without compensation when called on.

> [T]he obligation of the legal profession to serve indigents on court order is an ancient and established tradition, and ... appointed counsel have generally been compensated, if at all, only by statutory fees which would be inadequate under just compensation principles, and which are usually payable only in limited types of cases.

*United States v. Dillon,* 346 F.2d 633, 635 (9th Cir.1965), *cert. denied,* 382 U.S. 978,

---

6. Some courts avoid this confusion by issuing a formal "request" to counsel to represent a particular indigent. For an example of such a request, see *Bunton v. Englemyre,* 557 F.Supp. 1, 5 (E.D.Tenn.1981). *See also Chapman v. Kleindienst,* 507 F.2d 1246, 1250 (7th Cir.1974) (directing trial judge to "make the necessary request" of an already willing attorney).

7. An attorney may of course (indeed, must) decline even such a mandatory appointment if the attorney would be unable for some reason to adequately represent the client. Such an impairment may itself violate a criminal defendant's sixth amendment right to counsel, *see e.g., Glasser v. United States,* 315 U.S. 60, 76, 62 S.Ct. 457, 467, 86 L.Ed. 680 (1942) (conflict of interest), and in such a case the attorney must withdraw or, failing that, the court must disqualify the attorney, *see, e.g., United States v. Dolan,* 570 F.2d 1177, 1182 (3d Cir.1978).

8. Determination of "exceptional circumstances" requires a court to look at both "the likelihood of success on the merits [and] the ability of the petitioner to articulate his claims *pro se* in light of the complexity of the legal issues involved." *Weygandt v. Look,* 718 F.2d 952, 954 (9th Cir. 1983) (quoted in *Wilborn,* 789 F.2d at 1330–31). These factors must be viewed together, and neither is dispositve. *Wilborn,* 789 F.2d at 1331.

The Seventh Circuit has set forth more detailed criteria. It lists four factors that a district court should consider, in addition to the viability of the claim, in deciding whether to secure counsel for an indigent litigant: the litigant's ability to investigate the facts of the case, the likelihood of conflicting testimony requiring skilled cross-examination, the litigant's ability to adequately present the case, and the complexity of the legal and factual issues involved. *Childs v. Duckworth,* 705 F.2d 915, 922 (7th Cir.1983); *accord Ulmer v. Chancellor,* 691 F.2d 209, 213 (5th Cir.1982).

86 S.Ct. 550, 15 L.Ed.2d 469 (1966); *see Peterson v. Nadler,* 452 F.2d 754, 758 (8th Cir.1971). This duty of public service is a condition of practicing law, and constitutes neither a taking under the fifth amendment, *id.* at 635–36; *accord Dolan v. United States,* 351 F.2d 671, 672 (5th Cir. 1965); *see also Hurtado v. United States,* 410 U.S. 578, 588–89, 93 S.Ct. 1157, 1163–64, 35 L.Ed.2d 508 (1973) (citing, *inter alia, Dillon*), nor involuntary servitude under the thirteenth amendment, *see White v. United States Pipe & Foundry Co.,* 646 F.2d 203, 205 n. 3 (5th Cir.1981).[9] Nevertheless, Congress and the courts recognize the burden such appointments can pose for lawyers, *see, e.g., Bradshaw v. Zoological Society of San Diego,* 662 F.2d 1301, 1322 n. 3 (9th Cir.1981) (Wallace, J., dissenting); *Heidelberg v. Hammer,* 577 F.2d 429, 431 (7th Cir.1978), and do not compel such service lightly.

■ In our view, 28 U.S.C. § 1915(d) does not authorize appointment of counsel to involuntary service. Several factors lead us to this conclusion.

Most persuasively, the plain language of the statute states that a court may "request" counsel for indigents. *See* 28 U.S.C. § 1915(d). Statutes that have been construed as authorizing *appointment* of counsel commonly use such words as "appoint" or "assign." *See, e.g.,* 18 U.S.C. § 3006A(b) (1982) ("the court shall advise the defendant that he has the right to be represented by counsel and that counsel will be appointed to represent him if he is financially unable to obtain counsel"); 25 U.S.C. § 1912(b) (1982) ("In any case in which the court determines indigency, the parent or Indian custodian shall have the right to court-appointed counsel in any removal, placement, or termination proceeding. The court may, in its discretion, appoint counsel for the child upon a finding that such appointment is in the best interest of the child."); 42 U.S.C. § 1971(f) (1982) ("the court before which [a person

charged with contempt under 42 U.S.C. § 1975d(g) ] is cited or tried ... shall immediately, upon his request, assign to him such counsel, not exceeding two, as he may desire...."); 42 U.S.C. § 2000e–5(f)(1) (1982) ("Upon application by the complainant [in a Title VII action] and in such circumstances as the court may deem just, the court may appoint an attorney for such complainant...."); *see also* Fed.R.Crim.P. 44 ("Every defendant who is unable to obtain counsel shall be entitled to have counsel assigned to represent him at every stage of the proceedings....").

In addition, if a statute intends appointment of counsel, it often makes provision for paying such counsel. *See, e.g.,* 18 U.S.C. § 3006A(d); 25 U.S.C. § 1912(b) (1982). No statute provides funds to pay counsel secured under 28 U.S.C. § 1915(d).

■ We also note that the constitutional requirements for civil actions differ significantly from those for criminal actions in which courts may appoint counsel. Federal criminal defendants facing imprisonment are entitled to representation of counsel, *see, e.g.,* U.S. Const. amend. VI; *Johnson v. Zerbst,* 304 U.S. 458, 462, 58 S.Ct. 1019, 1022, 82 L.Ed. 1461 (1938), and the power of courts to appoint counsel for such defendants is thus necessary to preserve their constitutional rights. There is normally, however, no constitutional right to counsel in a civil case, *see Lassiter v. Department of Social Services,* 452 U.S. 18, 25–27, 101 S.Ct. 2153, 2158–60, 68 L.Ed.2d 640 (1981); *Peterson v. Nadler,* 452 F.2d 754, 757 (8th Cir.1971). *But cf. Lassiter,* 452 U.S. at 27–32, 101 S.Ct. at 2159–62 (suggesting that due process may in some cases require appointment of counsel for indigent parents in child custody termination proceedings). The failure of a court request actually to secure counsel therefore would not normally prejudice the civil litigant's constitutional rights.

Our earlier decisions do not conflict with our conclusion today. Although we too

---

**9.** For a discussion of potential first, fifth, thirteenth, and fourteenth amendment problems in compulsory service for the bar, see generally

Shapiro *The Enigma of the Lawyer's Duty to Serve,* 55 N.Y.U.L.Rev. 735, 762–77 (1980).

have fallen into the trap of using the word "appoint" when addressing section 1915(d),[10] we have never before specifically considered whether such "appointment" involves a mere request or a mandatory assignment. *See Wilborn,* at 1329 n. 1; *Aldabe,* 616 F.2d at 1093; *United States v. McQuade,* 579 F.2d 1180, 1180–81 (9th Cir.1978), *on appeal after remand,* 647 F.2d 938 (9th Cir.1981); *Alexander v. Ramsey,* 539 F.2d 25, 26 (9th Cir.1976); *Gardner,* 352 F.2d at 794.

In addition, other circuit and district courts that *have* specifically considered the distinction reach the same conclusion we reach here.[11] The leading Sixth Circuit case on the subject notes:

> In contrast to a criminal proceeding, in which the court has a duty to "assign" counsel to represent a defendant in accordance with his Constitutional right, Rule 44, Federal Rules of Criminal Procedure, 18 U.S.C.A., the court in a civil case has the statutory power only to "request an attorney to represent" a person unable to employ counsel. Title 28 U.S.C.A. § 1915(d).

*Reid v. Charney,* 235 F.2d 47, 47 (6th Cir. 1956) (action by prisoner for damages under 42 U.S.C. §§ 1981–83); *accord Rhodes v. Houston,* 258 F.Supp. 546, 579 (D.Neb.

1966), *aff'd,* 418 F.2d 1309 (8th Cir.1969), *cert. denied,* 397 U.S. 1049, 90 S.Ct. 1382, 25 L.Ed.2d 662 (1970);[12] *see also, e.g., Branch v. Cole,* 686 F.2d 264, 266–67 (5th Cir.1982) (assuming that counsel secured under section 1915(d) must serve voluntarily and expressing confidence that they will do so); *Bunton v. Englemyre,* 557 F.Supp. 1, 4 (E.D.Tenn.1981); *In re New Haven Radio Co.,* 18 B.R. 495, 496–97 (Bankr.D. Conn.1982).

We recognize that the Eighth Circuit has apparently taken a different approach, allowing mandatory uncompensated appointment of counsel in civil cases under section 1915(d). For example, that court has stated:

> The district court ruled that it had no *power* to appoint counsel to represent an indigent in civil cases. This ruling overlooks the express authority given it in 28 U.S.C. § 1915 to appoint counsel in civil cases. This court and other courts of appeals regularly make these appointments in habeas corpus and civil rights cases; district courts throughout the country do the same.

*Peterson v. Nadler,* 452 F.2d 754, 757 (8th Cir.1971) (footnote omitted; emphasis in original); *see Nelson v. Redfield Lithograph Printing,* 728 F.2d 1003, 1005 (8th

---

**10.** This imprecise use of the word "appoint" has led other courts and commentators to cite our cases for the power of appointment. *See, e.g., McKeever v. Israel,* 689 F.2d 1315, 1319–20 & n. 9 (7th Cir.1982) (citing *McQuade* ); *Ray v. Robinson,* 640 F.2d 474, 478 (3d Cir.1981) (same).

**11.** No Supreme Court opinion has directly dealt with the request/appointment confusion under section 1915(d). The only Supreme Court language that is arguably relevant is dictum that appears at first blush to *assume* the power of appointment:

> Courts may also impose additional burdens [in addition to passing on the sufficiency of the complaint] before appointing counsel for indigents in civil suits. See *Johnson v. Avery,* 393 U.S. 483, 487–88 [89 S.Ct. 747, 749–50, 21 L.Ed.2d 718] (1969).

*Bounds v. Smith,* 430 U.S. 817, 826 n. 15, 97 S.Ct. 1491, 1497 n. 15, 52 L.Ed.2d 72 (1977). The Court's language is not as broad as it appears, however. The *Johnson* case discussed postconviction remedies in general and habeas corpus actions in particular, and, as noted

above, 18 U.S.C. § 3006A(g) specifically provides for *appointment* of counsel in such cases. Consequently, despite *Bound's* unqualified reference to appointment in "civil suits," the context of the opinion makes clear that the Court was not referring to counsel secured under 28 U.S.C. § 1915(d). *See Branch v. Cole,* 686 F.2d 264, 266 n. 1 (5th Cir.1982).

**12.** The *Rhodes* court commented:

> Let it be remembered, too, that in relation to the court's duty or authority, as the case may be, Title 28 U.S.C. section 1915(d) which the plaintiff presently invokes, is demonstrably distinguishable, not only in mere verbal phrasing, but especially in substance, from Rule 44, Federal Rules of Criminal Procedure.... Title 28 U.S.C. § 1915(d) ... *permissively allows* the court (using the significant word "may") in a civil action, to *request* an attorney to represent a plaintiff granted leave to proceed in *forma pauperis* in a civil action, who is unable to employ counsel.

258 F.Supp. at 579 (emphasis in original).

Cir.1984) (appointing counsel for Title VII case under 28 U.S.C. § 1915(d) (without explaining why 42 U.S.C. § 2000e–5(f)(1) was not controlling)); *see also Tyler v. Lark*, 472 F.2d 1077, 1078–80 (8th Cir.) (counsel appointed to prosecute 42 U.S.C. § 1983 action may be compelled to serve without compensation) (citing *Powell v. Alabama*), *cert. denied*, 414 U.S. 864, 94 S.Ct. 114, 38 L.Ed.2d 84 (1973).

We reject the Eighth Circuit's approach for several reasons. Most importantly, it does not directly address what we consider the heart of the issue, the use of the word "request" in the statute itself. Moreover, its reference to the widespread practice of appointment in civil cases is overly generous. As discussed elsewhere, *appointment* of counsel in both habeas corpus actions and Title VII civil rights actions is specifically authorized by statute. 18 U.S.C. § 3006A(g); 42 U.S.C. § 2000e–5(f)(1). In light of this, the Eighth Circuit overstated the use of the section 1915(d) power to appoint counsel in civil cases.[13]

As a practical matter, we observe that the lack of court power to make mandatory assignments should not reduce the availability of counsel to needful indigent civil litigants under section 1915(d). Lawyers have long recognized an ethical obligation to represent litigants unable to pay for such assistance. *See, e.g.,* Model Code Professional Responsbility Canon 2, EC 2–25, 2–29, 8–3 (1980); Model Rules of Professional Conduct 6.1, 6.2 (1985). As a court, we know of a number of attorneys and other legal resources that offer such services on a regular or occasional basis, and we have requested their assistance in representing indigent litigants on many occasions.[14] If a court determines that a case has sufficient merit and a litigant sufficient need to justify uncompensated representation by counsel, we are confident that individual members of the bar will respect that decision and provide the needed services. *Accord Rhodes v. Houston*, 258 F.Supp. 546, 579 (D.Neb.1966) ("To the credit of the legal profession, it may be declared that such a *refusal* will rarely occur.") (emphasis in original), *aff'd*, 418 F.2d 1309 (8th Cir.1969), *cert. denied*, 397 U.S. 1049, 90 S.Ct. 1382, 25 L.Ed.2d 662 (1970).[15]

■ Despite our conclusion that section 1915(d) authorizes only a "request" for indigent representation,[16] we hold that the

---

**13.** Nevertheless, several Eighth Circuit cases, including *Nadler* itself (a diversity action for conversion) and *Tyler v. Lark*, 472 F.2d 1077, 1078–80 (8th Cir.) (counsel appointed to prosecute 42 U.S.C. § 1983 not entitled to compensation), *cert. denied*, 414 U.S. 864, 94 S.Ct. 114, 38 L.Ed.2d 84 (1973), apparently involve mandatory assignment of counsel without statutory authority other than section 1915(d). This seems to preclude the conclusion that the Eighth Circuit, like so many other courts, was merely careless with its language in using the word "appoint."

**14.** Other courts have made similar observations. *See, e.g., Branch v. Cole*, 686 F.2d 264, 266–67 (5th Cir.1982) (citing Model Code of Professional Responsibility's ethical obligations to provide representation to those who need it); *Caruth v. Pinkney*, 683 F.2d 1044, 1049 (7th Cir.1982) (noting the broad commitment of the legal community to *pro bono* work for indigent litigants), *cert. denied*, 459 U.S. 1214, 103 S.Ct. 1212, 75 L.Ed.2d 451 (1983); *Ray v. Robinson*, 640 F.2d 474, 476, 479 (3d Cir.1981) (recognizing the availability of aid from volunteers and law schools); *Heidelberg v. Hammer*, 577 F.2d 429, 431 (7th Cir.1978) ("We ourselves requested counsel to serve on appeal."); *Gordon v. Leeke*,

574 F.2d 1147, 1155 (4th Cir.) (Hall, J., dissenting) (noting state-funded program for assisting *pro se* inmate civil rights litigants), *cert. denied*, 439 U.S. 970, 99 S.Ct. 464, 58 L.Ed.2d 431 (1978); *Scott v. Plante*, 532 F.2d 939, 950 (3d Cir.1976) (recognizing the availability of aid from volunteers and law schools).

**15.** In the past, isolated cases have unfortunately left the needy unrepresented. *See, e.g., Reid v. Charney*, 235 F.2d 47, 47 (6th Cir.1956):

The court ... made repeated efforts to secure trial counsel for him. These efforts were unsuccessful, as were the appellant's own efforts to secure counsel in his own behalf, although he was given opportunity to do so by the district judge.

. . . .

... While the refusal of local counsel to serve was regrettable, the court could hardly do more than was done under the circumstances.

We are convinced that such *total* unavailability of willing counsel rarely if ever arises today.

**16.** Because we determine here that the trial court did not fulfill its duty to consider "requesting" counsel to serve, we need not consider

district court here did not adequately address Starr's motion for counsel.[17] In an appropriate case, a federal court has a duty under section 1915(d) to assist a party in obtaining counsel willing to serve for little or no compensation. The court does not discharge this duty if it makes no attempt to request the assistance of volunteer counsel or, where the record is not otherwise clear, explain its failure to do so. *McQuade*, 579 F.2d at 1181; *Gardner*, 352 F.2d at 793; *see Alexander*, 539 F.2d at 26.

In the present case, the only conclusion we can draw is that the district court believed, as it said, that it had no *power* to secure counsel for Starr, regardless of Starr's need or financial condition.[18] As a result, it never reached the merits of Starr's motion or exercised its discretion in requesting or declining to request counsel for him. We therefore must reverse and remand for determination of whether Starr is indigent and, if he is, for the exercise of the court's discretion in whether to request counsel to represent him.[19]

## II.

## APPOINTMENT OF GUARDIAN AD LITEM

### A. Standard of Review

Although this circuit has not specifically articulated its standard of review for appointment of a guardian ad litem, other circuits, older precedent, and common sense suggest that such appointment must normally be left to the sound discretion of the trial court and may be reviewed only for abuse of that discretion. *See Developmental Disabilities Advocacy Center, Inc. v. Melton*, 689 F.2d 281, 285 (1st Cir.1982); *Hoffert v. General Motors Corp.*, 656 F.2d 161, 164 (5th Cir.1981), *cert. denied*, 456 U.S. 961, 102 S.Ct. 2037, 72 L.Ed.2d 485 (1982); *Fong Sik Leung v. Dulles*, 226 F.2d 74, 82 (9th Cir.1955). In the present case, however, appellant Starr contends that the district court failed in its legal duty to inquire into Starr's circumstances and to exercise its discretion. This raises a question of law, reviewable *de novo* by this court. *See McConney*, 728 F.2d at 1201.

whether a court has the inherent power to appoint counsel without compensation independent of statutory authorization, *see* 20 Am. Jur.2d, *Courts*, § 79 (1965) (observing that some courts have claimed this power), especially where, as here, the adjudication of constitutional rights is involved. The issue of this inherent power would normally arise if a trial court determined that counsel should be requested to represent an indigent litigant, made such a request under section 1915(d), and found itself unable to so obtain counsel.

17. That Starr actually moved for "appointment" of counsel is not fatal to his motion. Because courts and attorneys use the words "request" and "appoint" loosely and often interchangeably, as discussed above, we can hardly penalize a *pro se* litigant for making the same mistake, especially in a motion that by its nature asserts the movant's inability to handle technical legal matters.

18. The government contends that the district court based its denial of Starr's plea for counsel on Starr's obvious ability to pay for a lawyer himself. The government argues that the trial court was aware that Starr owned at least the disputed real estate, as well as a mobile home and a barn. The court also knew, notes the government, that Starr had access to the government's estimated just compensation of $2900, on deposit with the court, which was available to Starr without prejudice to his right to seek additional compensation. As a result, the government argues, the district court "was able to ascertain" that Starr did not meet the indigency requirements of section 1915 and was not entitled to counsel secured under that section.

This argument is completely speculative. The court made no finding of fact or inquiry regarding Starr's finances. Starr asked for counsel at least three times and the court never suggested to him that he needed to prove indigence to qualify, despite the government's specific suggestion that the court do so. In light of the special solicitude of a trial court to *pro se* litigants, *see, e.g., Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976), the district court undoubtedly would have advised Starr of the affidavit requirement had it thought the filing could have made any difference.

19. We of course express no opinion on the merits of Starr's motion.

### B. Trial Court's Treatment of Suggestion of Incompetency

Starr argues that the trial court committed an error of law in failing to consider whether it should appoint a guardian ad litem to represent him.

■ Fed.R.Civ.P. 17(c) requires a court to take whatever measures it deems proper to protect an incompetent person during litigation.[20] Although the court has broad discretion and need not appoint a guardian ad litem if it determines the person is or can be otherwise adequately protected, it is under a legal obligation to consider whether the person is adequately protected. *See Roberts v. Ohio Casualty Insurance Co.*, 256 F.2d 35, 39 (5th Cir.1958).

■ In the present case, a question clearly existed whether Starr was competent and could adequately protect himself. The failure of a person appearing *pro se* to move under Rule 17, or any other rule or statute, for relief based on his incompetence is not fatal. Quite obviously an incompetent person cannot be held to compliance with technical rules. Rather, if it should appear during the course of proceedings that a party may be suffering from a condition that materially affects his ability to represent himself (if *pro se*), to consult with his lawyer with a reasonable degree of rational understanding, *Dusky v. United States*, 362 U.S. 402, 402, 80 S.Ct. 788, 788, 4 L.Ed.2d 824 (1960) (standard for competency to stand trial in criminal case); *Thomas v. Cunningham*, 313 F.2d 934, 938 (4th Cir.1963), or otherwise to understand the nature of the proceedings, *cf. Dusky*, 362 U.S. at 402, 80 S.Ct. at 788; *Thomas*, 313 F.2d at 938, that information should be brought to the attention of the court promptly.

■ In the present case, the court was clearly on notice that Starr claimed to be incompetent and his claim was made credible by official documentation. Despite this, the court apparently failed to make any inquiry into the issue and took no steps to insure that Starr's interests were adequately protected. This is not an abuse of discretion but a failure to exercise legally required discretion. *See Roberts*, 256 F.2d at 39.

■ As this case illustrates, the appointment of a guardian ad litem is more than a mere formalism. A guardian ad litem is authorized to act on behalf of his ward and may make all appropriate decisions in the course of specific litigation. For example, notwithstanding the incompetency of a party, the guardian may make binding contracts for the retention of counsel and expert witnesses and may settle the claim on behalf of his ward. *E.g., Fong Sik Leung*, 226 F.2d at 82.

The absence of a guardian ad litem in this case prejudices the ability of the court to request counsel to represent Starr under section 1915(d), puts the due process rights of Starr in jeopardy in any trial that proceeds absent such representation, and effectively precludes the possibility of a binding contract of settlement because of the incompetency of one of the parties. We realize that the amount at issue here is not large and that we are remanding for a second time an action already over a decade old. It may be that after two trials, enough is known about the merits of the case to enable agreement on the value of the land and settlement of the case, a course that would seem to be in everyone's best interest if it can legally be done. At the moment, however, the government is shackled by the possible legal incompeten-

---

**20.** Fed.R.Civ.P. 17(c) provides:

**Infants or Incompetent Persons.** Whenever an infant or incompetent person has a representative, such as a general guardian, committee, conservator, or other like fiduciary, the representative may sue or defend on behalf of the infant or incompetent person. If an infant or incompetent person does not have a duly appointed representative he may sue by his next friend or by a guardian ad litem. The court shall appoint a guardian ad litem for an infant or incompetent person not otherwise represented in an action or shall make such other order as it deems proper for the protection of the infant or incompetent person.

cy of the defendant, which would leave the validity of any settlement open to question.

## CONCLUSION

We note that Starr appeared before this court represented by retained counsel, and we recognize that the circumstances of his indigency and competency may have changed. We are concerned on this appeal, however, with his circumstances at the date of his trial, and it is unchallenged that the defendant appeared at trial without counsel, repeatedly requested counsel, and presented facts that strongly suggested his lack of mental competency. Under those circumstances, we conclude that it was error for the court to permit the trial to proceed without determining the necessity for appointment of a guardian ad litem and to fail to exercise its discretion to determine if circumstances made it appropriate to seek counsel to represent the defendant. We therefore reverse and remand to the district court for action consistent with this opinion.

On remand, the district court is directed to exercise its discretion under 28 U.S.C. § 1915(d) as to whether it should request an attorney to represent Starr in further proceedings. We note that this exercise of discretion requires consideration of Starr's indigent status and the "exceptional circumstances" under which such a request is properly granted. Any refusal to request an attorney shall be accompanied by factual findings adequate for appellate review.

Second, the district court is directed to exercise its discretion under Fed.R.Civ.P. 17(c) to determine whether it should appoint a guardian ad litem for Starr to protect his interests in further proceedings. A finding as to his competency should be made. If the district court concludes that a guardian ad litem need not be appointed, it should support that determination with factual findings adequate for appellate review. The district court is not limited to the appointment of a guardian ad litem but may "make such other order as it deems proper

for the protection of the ... incompetent person." Fed.R.Civ.P. 17(c).

Representation of Starr by an attorney will not be sufficient to satisfy the requirements of Rule 17(c). *See Roberts*, 256 F.2d at 39.

REVERSED AND REMANDED.

CANBY, Circuit Judge, concurring in the judgment:

I agree with the majority that this case should be reversed and remanded so that the district court can consider whether to secure counsel for Starr pursuant to 28 U.S.C. § 1915(d), and whether to appoint a guardian ad litem pursuant to Fed.R.Civ.P. 17(c).

I would, however, refrain from ruling, as the majority does, that district courts lack the power to *appoint* (rather than request) counsel under § 1915(d). In the past, our court has regularly referred to the power to "appoint" counsel pursuant to § 1915(d). *E.q., Aldabe v. Aldabe*, 616 F.2d 1089, 1093 (9th Cir.1980); *United States v. McQuade*, 579 F.2d 1180, 1180–81 (1978), *on appeal after remand*, 647 F.2d 938 (9th Cir.1981); *Alexander v. Ramsey*, 539 F.2d 25, 26 (9th Cir.1976); *Gardner v. Madden*, 352 F.2d 792, 794 (9th Cir.1965). The majority acknowledges as much, but states that the use of the term "appoint" was careless and that we had never focused on the distinction between "appoint" and "request."

All that is true, but I am not sure that I see the harm in the flexibility that we have lived with for so long, or the need to eliminate it when we have not been asked to do so. Surely the common practice, when relief under § 1915(d) is appropriate, is for the district court to seek a willing attorney to represent the indigent litigant. Yet there may have been, and may in the future be, exceptional occasions when the purpose of a § 1915(d) can only be served by imposing upon a reluctant attorney the duty of serving an indigent litigant. Without knowing the extent of such instances, and without briefing by interested parties,[1]

---

1. It is admittedly difficult to secure adequate

briefing of the issue in the normal course of

I am loathe to deny district courts this power.[2] I therefore do not join the opinion of the majority.

litigation; the question ususally arises only when the appellant is appearing pro se. Briefs could have been solicited from appropriate amici curiae and from the government, however.

2. The majority itself seems reluctant to close the door entirely. In footnote 16 of its opinion, the majority points out that the district courts may retain "inherent power" to appoint unwilling attorneys. If so, the denial of such power under § 1915(d) may turn out to have been a quixotic exercise.