**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| KENNARD LEE DAVIS, *Plaintiff-Appellant*, v. JAMES WALKER, Warden; SAMUEL MCALPINE; CHERYL BAKEWELL; RICHARD MARDER, *Defendants-Appellees*. | No. 12-15856 D.C. No. 2:10-cv-02139-KJM-DAD |
| KENNARD LEE DAVIS, *Plaintiff-Appellant*, v. JAMES WALKER, Warden; S. FLORY; DA ROSA; A. NANGALAMA; EDMONSON, *Defendants-Appellees*. | No. 12-15859 D.C. No. 2:08-cv-00593-KJM-DAD OPINION |

Appeal from the United States District Court
for the Eastern District of California
Kimberly J. Mueller, District Judge, Presiding

Argued and Submitted
January 16, 2014—San Francisco, California

Filed March 24, 2014

Before: Richard C. Tallman and Sandra S. Ikuta, Circuit
Judges, and Andrew P. Gordon, District Judge.[*]

Opinion by Judge Tallman

## SUMMARY[**]

### Prisoner Civil Rights

The panel vacated the district court's order, which denied
a prisoner's request to appoint a guardian ad litem and instead
stayed the prisoner's civil rights case until the prisoner was
found "restored to competency" and capable of protecting his
own interest through self-representation.

The panel first held that the district court's "lengthy and
indefinite" stay which put the prisoner "effectively out of
court," was an appealable final decision, or alternatively that
the stay was reviewable as a collateral order.

Although recognizing that the prisoner was incompetent,
the district court declined to appoint a guardian ad litem
because the Pro Bono Coordinator for the Eastern District of
California advised the court that no one was available to

---

[*] The Honorable Andrew P. Gordon, United States District Judge for the
District of Nevada, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has
been prepared by court staff for the convenience of the reader.

undertake the representation. The panel held that the district court's stay order failed to adequately protect the prisoner's interests and thus did not constitute an appropriate order under Rule 17(c)(2) of the Federal Rules of Civil Procedure. The panel noted that in addition to consulting with its Pro Bono Coordinator, the district court could have, among other things, sought counsel, made inquiry of the bar associations, or inquired as to whether law schools that have clinical programs or senior centers with social workers would be willing to undertake the necessary representation. Instead, the district court's stay order amounted to a dismissal with prejudice of the prisoner's actions. The panel directed the district court, on remand, to consider whether it should appoint a guardian ad litem or craft an appropriate order designed to protect the prisoner's interests.

## COUNSEL

Kayvan B. Sadeghi (argued), Morrison & Foerster LLP, New York, New York, for Plaintiff-Appellant.

Jose Zelidon-Zepeda (argued), Deputy Attorney General, San Francisco, California, for Defendants-Appellees James Walker, Samuel McAlpine, and Cheryl Bakewell in appeal number 12-15856, and for Defendants-Appellees James Walker, S. Flory, Da Rosa, A. Nangalama, and Edmonson in appeal number 12-15859.

Thomas J. Doyle, Schuering Zimmerman & Doyle, LLP, Sacramento, California, for Defendant-Appellee Richard Marder, M.D., in appeal number 12-15856.

# OPINION

TALLMAN, Circuit Judge:

This appeal arises from two consolidated cases in which Kennard Lee Davis, a prisoner suffering from schizoaffective disorder and who is proceeding pro se, sought damages from California prison officials under 42 U.S.C. § 1983. Davis moved for appointment of a guardian ad litem pursuant to Rule 17(c)(2) of the Federal Rules of Civil Procedure, which provides that:

> A minor or an incompetent person who does not have a duly appointed representative may sue by a next friend or by a guardian ad litem. The court must appoint a guardian ad litem—*or issue another appropriate order*—to protect a minor or incompetent person who is unrepresented in an action.

(emphasis added). The district court recognized throughout the pendency of both cases that Davis was, and remains, incompetent but denied his request for a guardian ad litem because the Pro Bono Coordinator for the Eastern District of California advised the court that no one was available to undertake the representation. In response, the court stayed Davis's cases indefinitely until he was found "restored to competency" and "capable of protecting his own interests through self-representation." We must determine whether, under Rule 17(c)(2), the district court erred by declining to appoint a guardian ad litem and instead staying Davis's cases indefinitely until he is found to be restored to competency. We vacate the district court's stay order and remand with instructions.

I

In 2008, Davis brought a § 1983 action in federal court against prison officials at California State Prison, Sacramento. Davis alleged that, in retaliation for filing numerous lawsuits and prisoner complaints, prison officials forced him to push a cart containing over 100 pounds of legal documents for over half a mile while handcuffed. Davis contended that when he sought medical help for his resulting injuries, prison medical staff were deliberately indifferent by denying him treatment. After 28 U.S.C. § 1915A(a) screening, the district court determined that Davis's complaint stated cognizable claims for excessive force, deliberate indifference to medical needs, and retaliation.

In 2010, Davis filed a second action against prison medical staff in which he alleged that the staff, in retaliation for Davis's numerous inmate appeals, denied him adequate medical care by leaving a pin in his left hand after surgery. The district court screened that complaint and found that it stated a cognizable claim under the First and Eighth Amendments. In September 2011, Davis filed a motion for a preliminary injunction to enjoin the prison medical staff from denying him adequate medical care.

In both actions, Davis filed numerous motions for appointment of a guardian ad litem or appointment of counsel.[1] In support of his motions, Davis submitted a

---

[1] In Davis's first § 1983 action, Davis filed motions for assignment of counsel or appointment of a guardian ad litem in September 2010 and July 2011. The September 2010 motion was construed as a motion for appointment of counsel under 28 U.S.C. § 1915(e)(1), which was denied by the magistrate judge, who cited a lack of extraordinary circumstances.

declaration from California Department of Corrections psychiatrist Dr. W. White, who treated Davis and diagnosed him as suffering from schizoaffective disorder (bipolar type), impulse control disorder, and substance-related mental disorder. Dr. White found that Davis had a history of hallucinations, delusions, and mood episodes, including mania, and that Davis posed a danger to himself. Davis also submitted evidence that he has been under court-ordered long-term involuntary medication pursuant to *Keyhea v. Rushen*, 223 Cal. Rptr. 746 (Cal. Ct. App. 1986), since April 2007.[2] Davis submitted an involuntary medication order from an administrative law judge in effect from February 9, 2011, to August 8, 2011. This order was extended by the administrative law judge through January 30, 2012.

At the same time Davis's two § 1983 actions were pending in the Eastern District of California, Davis was pursuing habeas relief in the Central District from a prior criminal conviction. In his habeas action, Davis had been evaluated by a court-appointed mental health specialist, who

---

The magistrate judge did not address Davis's alternative request for appointment of a guardian ad litem.

In Davis's second action, Davis filed motions for assignment of counsel or appointment of a guardian ad litem in September 2010, August 2011, and February 2012. The motions filed in September 2010 and August 2011 were also construed as motions for appointment of counsel and were denied. The magistrate judge again did not address Davis's alternative request for appointment of a guardian ad litem.

[2] A *Keyhea* order permits the long-term involuntary medication of an inmate upon a court finding that the course of involuntary medication is recommended and that the prisoner, as a result of mental disorder, is gravely disabled and incompetent to refuse medication, or is a danger to himself or others. *See Keyhea*, 223 Cal. Rptr. at 755–56.

found him to be incompetent. The district court there appointed a guardian ad litem and found that Davis "does not have the ability to consult with his lawyer with a reasonable degree of rational understanding and does not have a rational nor factual understanding of the proceedings against him."

In October 2011, Davis's first § 1983 action was reassigned to the same magistrate judge and district court judge before whom the second action was pending. In February 2012, the magistrate judge addressed Davis's outstanding July 2011 request for a guardian ad litem or counsel.

The magistrate judge recognized that Davis had been found incompetent in his pending federal habeas proceeding and was currently receiving long-term involuntary psychotropic medication as directed by the state court order. After referencing Rule 17(c), the magistrate judge noted that the court was not required to appoint a guardian ad litem if it found that Davis's interests were otherwise adequately protected. The report and recommendation concluded:

> This court has been advised by the ADR and Pro Bono Coordinator for the Eastern District of California that there is no individual available to serve as guardian ad litem for plaintiff, or to undertake the representation of plaintiff in this action. Plaintiff's motion for appointment of a guardian ad litem and/or

appointment of counsel must therefore be denied.[3]

The magistrate judge recommended that "the most appropriate available measure" to adequately protect Davis was "to stay the cases until any party thereto provides evidence that plaintiff has been restored to competency and is capable of protecting his own interests through self-representation[.]" The magistrate judge then denied all pending motions in both cases without prejudice.

In April 2012, after conducting a de novo review of the case, the district court adopted the magistrate judge's findings and recommendations in full. The district court concluded that Rule 17(c) required the court to either appoint a guardian ad litem or issue another appropriate order, and "[t]he present order staying the above-captioned matters is such an appropriate order." The district court stayed both of Davis's cases until "a motion to lift the stay accompanied by evidence that plaintiff has been found to be restored to competency" was filed. The district court then administratively closed Davis's cases, which removed Davis's cases from the district court's active docket. Davis filed a timely appeal, and a separate panel of our court appointed Davis pro bono counsel[4] to address whether, in light of Rule 17(c), the district court

---

[3] Other than briefly mentioning Davis's alternative request for appointment of counsel, the magistrate judge did not discuss whether appointment of counsel was appropriate.

[4] The court commends appellate pro bono counsel for agreeing to take on this representation given the difficulty of representing an incompetent litigant.

erred by declining to appoint a guardian ad litem and instead indefinitely staying Davis's cases.[5]

## II

Before reaching the merits, we first consider whether we have jurisdiction under 28 U.S.C. § 1291 to review the propriety of the district court's stay order.  Ordinarily, a stay order is not an appealable final decision.  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 10 n.11 (1983).  However, because the already lengthy and indefinite stay puts Davis "effectively out of court," the stay order on these facts "amounts to a dismissal of the suit" and is reviewable as a final decision under § 1291.  *Id.* at 10.  Alternatively, the order is appealable within the interpretation of the finality rule articulated in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541 (1949), which recognized that § 1291's reference to "final decisions" includes certain interlocutory orders that "finally determine claims of right separable from, and collateral to, rights asserted in the action[.]"  *Id.* at 546.  We explain both conclusions more fully in the sections that follow.

## A

The district court's stay order is an appealable final decision under the *Moses H. Cone* doctrine.  There, a hospital brought suit in state court against a contractor seeking a

---

[5] Davis also appealed the district court's denial of his motion for a preliminary injunction.  However, after obtaining pro bono counsel, Davis conceded in his Reply Brief that he no longer challenges the denial of the motion for a preliminary injunction.  Therefore, we do not address that issue.

declaratory judgment that there was no right to arbitration under the contract. 460 U.S. at 7. The contractor then sought an order in federal court to compel arbitration under the Federal Arbitration Act. *Id.* The district court stayed the federal action pending resolution of the arbitration question in state court. *Id.* The Supreme Court concluded that the district court's stay order was appealable under § 1291 since the stay order effectively amounted to a dismissal of the federal action—as a result of the stay, there would be "no further litigation in the federal forum," and the state court's judgment on the arbitration issue would result in res judicata as to future claims. *Id.* at 10. Because the state court proceedings would moot the arbitration issue in federal court such that the plaintiff was "effectively out of court," the Court concluded that the stay order was immediately appealable. *Id.*

We extended the *Moses H. Cone* doctrine in *Blue Cross & Blue Shield of Alabama v. Unity Outpatient Surgery Center, Inc.*, 490 F.3d 718 (9th Cir. 2007), to allow the immediate appeal of a stay order that "impose[s] lengthy or indefinite delays," even absent a res judicata risk. *Id*. at 723. In *Blue Cross*, an insurance company brought a civil suit in federal court, alleging that the defendants and their associates had enticed patients to undergo unnecessary treatments, billed Blue Cross for the procedures, and collected millions of dollars in reimbursement from Blue Cross. *Id*. Several defendants facing serious risk of criminal prosecution requested stays of the civil suits on the basis that discovery in the civil suit implicated their Fifth Amendment rights. *Id.* The district court granted the stays, and we found jurisdiction to consider their propriety. Noting that the exact length of the stays was unknown but "could easily last as long as the five-

or six-year limitations period in the criminal cases," we concluded:

> [L]engthy and indefinite stays place a plaintiff effectively out of court. Such an indefinite delay amounts to a refusal to proceed to a disposition on the merits. Even if litigation may eventually resume, such stays create a danger of denying justice by delay. Delay inherently increases the risk that witnesses' memories will fade and evidence will become stale.

*Id.* at 724 (internal citations and quotations omitted). In *Blue Cross*, each of the stays had lasted far longer than the 18-month delays that other courts had considered sufficient to place the plaintiffs effectively out of court. *Id.* (citing *Am. Mfrs. Mut. Ins. Co. v. Edward D. Stone, Jr. & Assocs.*, 743 F.2d 1519, 1524 (11th Cir. 1984); *Hines v. D'Artois*, 531 F.2d 726, 732 (5th Cir. 1976)). On this basis, we concluded that jurisdiction was proper under § 1291. *Id.*

Relying on *Blue Cross*, we conclude that the stay in this case is both lengthy and indefinite, if not infinite. Davis has been involuntarily medicated since March 2007 and is still unable to provide reasoned and informed consent to accept or refuse treatment. More importantly, Davis has been found incompetent, and there is no indication from the record that Davis will ever regain the competency needed to lift the stay order. *See Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1102 (9th Cir. 2005) (noting that "absolute certainty is not required in order to put a party 'effectively out of court' within the meaning of the *Moses H. Cone* doctrine"). Finally, the district court's stay order, entered in April 2012, has already

lasted longer than the 18-month delay we deemed sufficient for review in *Blue Cross*. *See* 490 F.3d at 724. Because the "lengthy and indefinite" stay puts Davis "effectively out of court," we have jurisdiction under § 1291. *Id.*

B

Even if the district court's stay order were not appealable under the *Moses H. Cone* doctrine, as developed in *Blue Cross*, it would nevertheless be appealable within the interpretation of the finality rule under *Cohen*, 337 U.S. at 546. To fall within the small class of collateral orders that may be immediately appealed under *Cohen*, the order must (1) conclusively determine the disputed question, (2) resolve an important issue completely separate from the merits of the action, and (3) be effectively unreviewable on appeal from a final judgment. *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468 (1978). The *Cohen* criteria are satisfied here.

In *Moses H. Cone*, the Court determined that the stay order conclusively determined the disputed question because, although the stay was technically open to reconsideration, "there [was] no basis to suppose that the District Judge contemplated any reconsideration of his decision[.]" 460 U.S. at 12–13. The stay order in this case forecloses both of Davis's § 1983 actions from proceeding until he is restored to competency and can represent himself. Although the district court's stay order could theoretically be modified, the court did not impose a time limit on the stay or indicate any circumstances that might trigger modification. *See Lockyer*, 398 F.3d at 1103; *Dependable Highway Exp., Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1065 (9th Cir. 2007). Instead, the court administratively closed Davis's cases and removed them from the court's active docket. The terms of

the stay are absolute—unless and until Davis is found competent, his § 1983 actions will not proceed.

*Cohen*'s second criterion, that the order resolves an important issue that is completely separate from the merits, is also satisfied. Here, the district court's order "amounts to a refusal to adjudicate the merits" of Davis's § 1983 actions. *Moses H. Cone*, 460 U.S. at 12. This circumstance "plainly presents an important issue separate from the merits." *Id.*

The particular circumstances of this stay also satisfy *Cohen*'s third criterion because the propriety of the stay will be effectively unreviewable on appeal from a final judgment. *Lockyer*, 398 F.3d at 1104. Most likely, there will never be a final order entered because Davis will never regain competency, and thus the stay order has effectively ended the litigation. And even if Davis regains competency, the stay will be lifted and the suit will proceed, "rendering review of the stay impossible." *Dependable Highway Exp., Inc.*, 498 F.3d at 1065 (citing *Lockyer*, 398 F.3d at 1104). Therefore, the district court's stay order is reviewable as a collateral order under *Cohen*.

## III

The decision to appoint a guardian ad litem under Rule 17(c) is normally left to the sound discretion of the trial court and is reviewed only for abuse of discretion.[6] *See United*

---

[6] Davis contends that we should review the district court's decision de novo because, as in *30.64 Acres of Land*, the district court "failed in its legal duty to inquire into [Davis's] circumstances and to exercise its discretion." *30.64 Acres of Land*, 795 F.2d at 804. We find *30.64 Acres of Land* distinguishable. There, although the defendant claimed to be

*States v. 30.64 Acres of Land, More or Less*, 795 F.2d 796, 804 (9th Cir. 1986). Likewise, the district court's imposition of a stay order is reviewed for abuse of discretion. *Dependable Highway Exp., Inc.*, 498 F.3d at 1066. First, we consider whether the district court identified the correct legal standard. Second, we determine whether the district court's findings of fact, and its application of those findings of fact to the correct legal standard, were illogical, implausible, or without support in inferences that may be drawn from facts in the record. *United States v. Hinkson*, 585 F.3d 1247, 1251 (9th Cir. 2009) (en banc).

IV

The purpose of Rule 17(c) is to protect an incompetent person's interests in prosecuting or defending a lawsuit. *See Gardner ex rel. Gardner v. Parson*, 874 F.2d 131, 140 (3d Cir. 1989). Once the court determines that a pro se litigant is incompetent, the court generally should appoint a guardian ad litem under Rule 17(c). But the Rule does not make such an appointment mandatory. If another order would sufficiently protect the incompetent person's interests in the litigation in lieu of a guardian, the court may enter such an order. *See 30.64 Acres*, 795 F.2d at 805; *Adelman ex rel. Adelman v. Graves*, 747 F.2d 986, 989 (5th Cir. 1984). Although the

---

incompetent and his claim was made credible by official documentation, the district court completely failed to consider whether Rule 17(c) applied. We concluded that Rule 17(c) imposes on the district court a legal obligation to consider whether an incompetent litigant is adequately protected. *Id.* at 805. Therefore, we viewed the district court's complete failure to consider Rule 17(c) as "a failure to exercise legally required discretion," reviewable de novo. *Id.* Here, because the district court did consider the applicability of Rule 17(c), we review the district court's decision for an abuse of discretion.

district court has discretion to craft an appropriate remedy to protect the incompetent person, the court may not use the Rule as a vehicle for dismissing claims or for allowing the interests of an incompetent litigant to go completely unprotected. *Gardner*, 874 F.2d at 140.

Here, after the district court was informed that no one was available to serve as a guardian ad litem, it determined that the most appropriate remedy to protect Davis's interests was to stay both of Davis's § 1983 actions, to be lifted only upon a finding that Davis was competent and able to represent himself pro se. Given Davis's circumstances, this stay order left his interests in the litigation completely unprotected and functionally operated as a dismissal with prejudice of Davis's actions, contrary to Rule 17(c)'s mandate that the court "protect [an] incompetent person who is unrepresented in an action." Fed. R. Civ. P. 17(c)(2). Davis's long history of mental illness and numerous involuntary medication orders, combined with Dr. White's psychiatric report and the federal habeas court's finding of incompetency, were sufficient to put the district court on notice that Davis is incompetent and that he shows no signs of regaining competency in the future. Even if Davis were one day restored to competency such that he could represent himself pro se, his ability to litigate his § 1983 actions would be substantially prejudiced through delay, as witnesses' memories fade and evidence becomes stale. *See Blue Cross*, 490 F.3d at 724. Instead of satisfying the obligation created by Rule 17(c) to ensure that Davis's interests in the litigation would be adequately protected, the district court closed the courthouse doors, aware of the strong probability that Davis would not soon return. The district court's order was thus not an "appropriate order" to fulfill its mandate to protect Davis's interests. Fed. R. Civ. P. 17(c)(2).

We are sensitive to the limited supply of individuals willing to represent clients like Davis and we readily acknowledge that this placed the district court in a difficult predicament. Nonetheless, in addition to consulting with its Pro Bono Coordinator, the court could have "sought counsel, made inquiry of the bar associations, or inquired as to whether law schools that may have clinical programs or senior centers with social workers would be willing to undertake the necessary representation." *Powell v. Symons*, 680 F.3d 301, 308 (3d Cir. 2012). If no suitable guardian was found, the court could have placed Davis on a waiting list for guardian ad litem services or provided Davis the opportunity to renew his motion if he or the court identified a suitable individual willing to serve as guardian. If the court determined that a stay order was still an appropriate solution, the court might have engaged in periodic case management conferences to reassess Davis's competency or monitor his search for a guardian. Alternatively, the court could have appointed counsel pursuant to 28 U.S.C. § 1915(e)(1), which would have likely been sufficient. *See Krain v. Smallwood*, 880 F.2d 1119, 1121 (9th Cir. 1989). This list is not exhaustive—the district court had many options available that would have adequately protected Davis's interests and satisfied the court's obligations under Rule 17(c). Instead, the terms of the order completely deprived Davis of a guardian until he was "found to be restored to competency," at which point Davis would no longer need the services of a guardian to protect him.

We read Rule 17(c) to require a district court to "take whatever measures it deems proper to protect an incompetent person during litigation." *30.64 Acres*, 795 F.2d at 805. Under these circumstances, we conclude that the district court abused its discretion by staying Davis's cases until he is

found competent (if ever). Such a stay order fails to adequately protect Davis's interests and thus does not constitute "another appropriate order" under Rule 17(c). Instead, it amounts to a dismissal with prejudice of Davis's actions. We therefore vacate the district court's order and remand to the district court for action consistent with this opinion. On remand, the district court is directed to consider whether it should appoint a guardian ad litem for Davis pursuant to Rule 17(c).[7] If the district court declines to appoint a guardian, it should heed the advice herein, and craft an appropriate order designed to protect Davis's interests.

**VACATED AND REMANDED, with instructions.**

Each party shall bear its own costs.

---

[7] The district court is welcome to contact this court's Pro Se Unit Supervising Attorney for assistance in locating someone outside the Eastern District of California who would be willing to accept the appointment.