Isabella **FERRELLI**, Plaintiff–Appellant,

v.

**RIVER MANOR HEALTH CARE CENTER**, Defendant–Appellee.

**Docket No. 00–9515.**

United States Court of Appeals, Second Circuit.

Argued June 10, 2002.

Decided March 21, 2003.

Jonathan H. Romberg (Janet M. Zicarelli and Peter Choy, law students, argued and on the brief) Center for Social Justice, Seton Hall University School of Law, Newark, N.J., for Plaintiff–Appellant.

Carmelo Grimaldi, Kaufman, Schneider & Bianco, LLP, Jericho, N.Y., for Defendant–Appellee.

Before: WALKER, Chief Judge, MINER and CABRANES, Circuit Judges.

JOHN M. WALKER, JR., Chief Judge.

This case raises the question of when a court is required to inquire into the mental capacity of a pro se litigant to determine whether, pursuant to Federal Rule of Civil Procedure ("Rule") 17(c), the court should appoint a guardian ad litem or take other measures to protect the litigant's interests.[1] Pro se plaintiff-appellant Isabella Ferrelli sued defendant-appellee River Manor Health Care Center ("River Manor") after being fired from her position as a licensed practical nurse, claiming that she had been terminated on the basis of race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*

The United States District Court for the Eastern District of New York (Edward R. Korman, *Chief Judge*) assigned the case to Magistrate Judge Steven M. Gold for pre-trial management. Plaintiff Ferrelli filed an application for court-appointed counsel, which Magistrate Judge Gold denied with leave to renew. Ferrelli then refused to respond to defendant's discovery requests unless she was provided counsel, explaining that she lacked the legal knowledge and mental capacity necessary to cooperate in discovery, and expressing her belief that defendants were involved in a conspiracy to injure or kill her. After warning Ferrelli of the possible consequences of her refusal to supply discovery, Magistrate Judge Gold issued a Report and Recommendation ("the Report") recommending that the district court bar plaintiff from presenting certain evidence at trial. Judge Korman adopted the Report by memo endorsement. River Manor then filed a motion for summary judgment. Ferrelli opposed the motion, continuing to claim that she lacked the mental capacity to proceed pro se. Judge Korman granted summary judgment to the defendant by memo endorsement without addressing plaintiff's opposition.

Plaintiff filed a timely appeal and on April 5, 2001, a different panel of this Court appointed appellate counsel to plaintiff and ordered counsel to consider whether the district court should have inquired into appellant's mental capacity and the appropriateness of appointing a guardian ad litem, pursuant to Rule 17(c), or assigned counsel. For the reasons stated below, we affirm the district court's grant of summary judgment.

## BACKGROUND

Ferrelli worked at River Manor as a licensed practical nurse from January 21, 1993 until November 4, 1997, the day she was terminated. Ferrelli, who is white, contends that she was terminated on the basis of race. River Manor maintains that Ferrelli was terminated for failing to follow the proper procedures for distributing controlled drugs to the resident patients.

---

1. Technically, an incompetent plaintiff sues by a *prochein ami,* or "next friend," and an incompetent defendant defends by a guardian ad litem. *See Dacanay v. Mendoza,* 573 F.2d 1075, 1076 n. 1 (9th Cir.1978). Because the duties and powers of both types of representatives are identical, *see id.,* the term guardian ad litem is often used to refer to the representative appointed to a plaintiff or defendant.

Ferrelli denies River Manor's misconduct charges and contends that non-white employees "with more serious infractions were not terminated" and that she "was treated in a way that no ... non-white employee was treated prior to and at termination."

Prior to filing the instant suit, Ferrelli contested her termination in several other fora. First, she sought an adjudication by the State of New York Unemployment Insurance Appeal Board ("the Board") that she was not terminated for misconduct, a determination that would entitle her to unemployment benefits. The Board found that River Manor had relied primarily on hearsay to support its finding of misconduct and that Ferrelli's sworn testimony—which the Board held was not inherently incredible—was entitled to greater weight. Accordingly, the Board concluded that Ferrelli should not be disqualified from receiving benefits. Second, Ferrelli filed a grievance through her union, which ultimately resulted in an arbitration decision concluding that Ferrelli had engaged in misconduct, but that the appropriate response was suspension for approximately nineteen months rather than termination. The arbitrator ordered River Manor to reinstate Ferrelli and to pay her approximately two-and-a-half months of back pay. Third, Ferrelli filed a complaint with the Equal Employment Opportunity Commission, which issued a right-to-sue letter on December 12, 1998. Acting pro se, Ferrelli then filed her Title VII complaint in the district court.

Two and a half months after filing her complaint, Ferrelli filed a written application for court-appointed counsel, a request she renewed several times during pretrial proceedings. At the initial pre-trial conference, Magistrate Judge Gold denied her application for court-appointed counsel on the basis that "just looking at the outer circumstances of your case, they don't raise the same likelihood of or indications of likely merit on the surface," and that her case was not "compelling." Ferrelli was given leave to renew her request after discovery, "if the case survive[ed][a] dispositive motion." At a subsequent conference convened to address Ferrelli's failure to cooperate in discovery, Ferrelli renewed her request for counsel, asserting that she could not answer the interrogatories for reasons that "pertain[ ] to my safety." She also informed the magistrate judge that "my life is in danger and I do need federal protection," and that "I don't have the legal knowledge or training to do this." At a later status conference, Ferrelli explained that she could not answer defendant's interrogatories because "this is a conspiracy against me" involving River Manor and others, and that she could not provide any information without the assistance of an attorney.

At all of these conferences, Magistrate Judge Gold informed Ferrelli that she was required to answer defendant's requests to disclose which of defendant's employees had allegedly discriminated against her. At the last conference, the magistrate judge warned her of the likelihood that she would be barred from presenting any witnesses that she did not divulge. Nevertheless, Ferrelli continued to resist answering defendant's discovery requests. Thereupon River Manor filed a motion to preclude Ferrelli from presenting certain evidence related to the information she refused to disclose, and on March 22, 2000 the magistrate judge filed a Report recommending that Judge Korman grant the motion. Ferrelli filed a timely objection to the Report on April 7, 2000 in which she again alleged criminal conduct by the defendant including attempted murder, and stated "I have been denied the mental capacity to proceed in this case ProSe [*sic*]. With the Court's permission I'm in

need of the Court's intervention to give me an attorney, in order for me to prevail and successfully proceed forward." On April 17, 2000 the district court adopted the magistrate judge's recommendation by memo endorsement.

The defendant then moved for summary judgment, to which Ferrelli's only reply, dated six days after her opposition papers were due, asserted that

> [t]he denial of my 14th Amendment Rights by the City and by the State of New York, has been and is contin[u]ous, and on going in the day and in the night without pause and has hampered my ability to maintain a suit within the Federal Court while laboring under such a defect of reason, and mental incapability and to maintain said suit from the onset.
> As of February 18, 2000, it has become impossible, and without Federal intervention to stop any further damage to my body, and to stop any further damage to my mind by those employe[d] by New York City, and by the State of New York namely members of the New York City Police Department who have engaged in or have summon[ ]ed on their behalf those who have engaged in the use of children, the use of two Special Agents of the F.B.I., attempted murder, murder, arson, bank robbery, fraud, compromising police investigations, extortion, bombings, conspiracy, and the taking of this community and setting it aside from articles of the constitution gives cause for me to say that Federal Rule of Civil Procedure # 56 is not paramount in this case at this time.

The district court subsequently granted defendant's motion for summary judgment by memo endorsement, and Ferrelli filed a timely appeal. A panel of this court appointed appellate counsel and ordered briefing on "whether, when faced with appellant's claim that she lacked the mental capacity to respond to defendant's motion for summary judgment," the district court should have inquired into appellant's mental capacity and considered appointing a guardian ad litem or assigned counsel.

## DISCUSSION

### A. *Standard of Review*

■ Ferrelli contends that the district court erred by failing to conduct an inquiry into her mental capacity to determine whether it should appoint a guardian ad litem and by failing to appoint counsel. We review a district court's decisions as to whether to appoint a guardian ad litem under Rule 17(c) and whether to appoint counsel under 42 U.S.C. § 2000e–5(f)(1) for abuse of discretion. *See, e.g., Jenkins v. Chem. Bank,* 721 F.2d 876, 879 (2d Cir.1983) (appointment of counsel); *Developmental Disabilities Advoc. Ctr., Inc. v. Melton,* 689 F.2d 281, 285 (1st Cir.1982) (appointment of guardian ad litem).

### B. *Appointment of Guardian Ad Litem*

Rule 17(c) provides, in relevant part, that "[t]he court shall appoint a guardian ad litem for an infant or incompetent person not otherwise represented in an action or shall make such other order as it deems proper for the protection of the infant or incompetent person." Fed.R.Civ.P. 17(c).[2]

---

**2.** The full text of Rule 17(c) states:

Infants or Incompetent Persons. Whenever an infant or incompetent person has a representative, such as a general guardian, committee, conservator, or other like fiduciary, the representative may sue or defend on behalf of the infant or incompetent person. An infant or incompetent person who does not have a duly appointed representative may sue by a next friend or by a guardian ad litem. The court shall appoint a guardian ad litem for an infant or incompetent person not otherwise represented in an action or shall make such other order as it

The rule gives us no guidance regarding the circumstances that warrant a competency inquiry, or whether a pro se plaintiff should receive special consideration under the rule. In providing a standard to guide the district court's discretion in this area, we are mindful of the need to protect the rights of the mentally incompetent. However, in light of the volume of pro se filings in this Circuit, we cannot disregard the potential burden on court administration associated with conducting frequent inquiries into pro se litigants' mental competency.[3]

■ Ferrelli argues that Rule 17(c) requires a district court to *sua sponte* make a determination of competency whenever a "substantial question" exists regarding the plaintiff's mental capacity. Thus, Ferrelli maintains that, because her own requests for counsel, coupled with her in-court statements, raised a substantial question regarding her mental competency, they were sufficient to trigger the district court's obligation to determine whether Rule 17(c) protection was warranted. We disagree. Neither the language of Rule 17(c) nor the precedent of this court or other circuits imposes upon district judges an obligation to inquire *sua sponte* into a pro se plaintiff's mental competence, even when the judge observes behavior that may suggest mental incapacity.

■ Rule 17(c) requires that when an "incompetent person" is not represented by a full-time guardian, the court "shall appoint a guardian ad litem for [that person] . . . or shall make such other order as it deems proper" to protect the incompetent's interests. Ferrelli urges that this language obligates a court to conduct a *sua sponte* inquiry into a litigant's competency when he or she demonstrates signs of incapacity. We read nothing in the rule itself that obligates a district court to monitor a pro se litigant's behavior for signs of mental incompetence. The obligation imposed by the final sentence of Rule 17(c)— the duty to "appoint" or "make such other order"—arises after a determination of incompetency. If a court were presented with evidence from an appropriate court of record or a relevant public agency indicating that the party had been adjudicated incompetent, or if the court received verifiable evidence from a mental health professional demonstrating that the party is being or has been treated for mental illness of the type that would render him or her legally incompetent, it likely would be an abuse of the court's discretion not to consider whether Rule 17(c) applied.[4] *See Hudnall v. Sellner*, 800 F.2d 377, 385 (4th Cir.1986) (noting that "if there has been a legal adjudication of incompetence and that is brought to the court's attention, the Rule's provision is brought in play").

---

deems proper for the protection of the infant or incompetent person.

**3.** For example, the most recent data readily available from the Eastern District of New York reflects that in calendar year 1999, 1217 pro se filings accounted for approximately 15% of the new cases filed in that district. *See* Lois Bloom & Helen Hershkoff, Federal Courts, Magistrate Judges, and the Pro Se Plaintiff, 16 Notre Dame J.L. Ethics & Pub. Pol'y 475, 494–95 (2002). Data collected by the Pro Se Office of the Southern District of New York indicates that, in calendar year 2002, 2229 pro se fillings accounted for ap-

proximately 20% of the new cases filed in that district.

**4.** We do not suggest that a pro se litigant is required to file a formal motion to trigger an inquiry into his or her mental competence. *See United States v. 30.64 Acres of Land*, 795 F.2d 796, 805 (9th Cir.1986) (noting that "an incompetent person cannot be held to compliance with technical rules.") However, absent actual documentation or testimony by a mental health professional, a court of record, or a relevant public agency, the district court is not required to undertake an inquiry into a pro se litigant's mental capacity.

Standing alone, however, a litigant's bizarre behavior is insufficient to trigger a mandatory inquiry into his or her competency. *See id.*

Ferrelli relies heavily on *United States v. 30.64 Acres of Land,* 795 F.2d 796, 797 (9th Cir.1986), and *Krain v. Smallwood,* 880 F.2d 1119, 1121 (9th Cir.1989), to support her interpretation of Rule 17(c). Those cases do not address the precise issue we must resolve here: What factors trigger a *sua sponte* inquiry into a pro se plaintiff's mental competence? In *30.64 Acres,* the pro se defendant indicated to the court that he was incapable of representing himself and provided a Social Security Administration ("SSA") report that found him to be completely physically and mentally disabled. *See 30.64 Acres,* 795 F.2d at 797–98. The government attorneys in that case advised the court that, in view of the SSA determination, the court might be required to inquire into defendant's condition or appoint a guardian ad litem pursuant to Rule 17(c). *See id.* at 798. The Ninth Circuit held that under those circumstances, the district court was required to consider the propriety of appointing a guardian ad litem for the pro se defendant. *See id.* at 806.

In *Krain,* a magistrate judge determined "that a substantial question existed regarding [the plaintiff's] competency to proceed pro se," and "ordered [him] to produce information needed to determine whether [he] was competent." *Krain,* 880 F.2d at 1121. When Krain failed to provide that information, the district court

dismissed his complaints with prejudice. *See id.* The Ninth Circuit reversed and remanded, holding that "when a substantial question exists regarding the competence of an unrepresented party the court may not dismiss with prejudice for failure to comply with an order of the court." *Id.* Neither *30.64 Acres* nor *Krain* supports the proposition that Rule 17(c) requires the district court to determine a pro se litigant's competency simply because the litigant asserts her own incompetence or displays apparent signs of mental incapacity.[5] In both cases the Ninth Circuit held that where a substantial question as to a pro se litigant's mental competency had already been identified by the district court, it was error for the district court to fail to consider appointing a guardian ad litem. Neither *30.64 Acres* nor *Krain* supports the proposition that Rule 17(c) requires courts to make a *sua sponte* determination of a pro se litigant's mental competence.[6]

The Fourth Circuit's holding in *Hudnall* supports our interpretation of Rule 17(c). In that case, the Fourth Circuit declined to find that a pro se defendant's bizarre and self-defeating behavior at trial required the district court "to conduct a collateral judicial inquiry into" the defendant's mental competency. *See* 800 F.2d at 384–85. The *Hudnall* court recognized "the practical problem presented by a case in which a presumably competent party might be thought to be acting oddly, or foolishly, or self-destructively in prosecuting or defending a civil lawsuit, with or without coun-

---

**5.** Ferrelli's reliance on *Roberts v. Ohio Casualty Insurance Co.* is similarly misplaced because that case involved the district court's obligation to consider appointing guardians ad litem for minors who had been sued. *See* 256 F.2d 35, 39 (5th Cir.1958).

**6.** In *Krain* the magistrate judge had identified a "substantial question" as to the plaintiff's

mental competence. *See* 880 F.2d at 1121. The Ninth Circuit opinion sheds no light on how the magistrate judge reached that determination, however, and does not hold that the district court was under a duty to identify abnormal behavior that might evidence mental incompetence. *See id.*

sel." *Id.* at 385. The Fourth Circuit also observed, as do we, that "[p]arties to litigation behave in a great variety of ways that might be thought to suggest some degree of mental instability," and that there is no "necessary relationship between 'mental incompetence' [of the sort that would warrant the appointment of a legal representative] and various forms of mental derangement or personality disorder that may cause utterly bizarre and destructive conduct in litigation." *Id.* Like the Fourth Circuit, we do not read Rule 17(c) to require a court to attempt to distinguish between the truly incompetent and those who—because of a personality disorder or other cause—behave in a foolish or bizarre way, hold irrational beliefs, or are simply inept.

■ Although we do not find that Rule 17(c) *requires* courts to inquire into the necessity of appointing a guardian ad litem absent verifiable evidence of mental incapacity, we also note that nothing in that rule *prevents* a district court from exercising its discretion to consider *sua sponte* the appropriateness of appointing a guardian ad litem for a litigant whose behavior raises a significant question regarding his or her mental competency. Indeed, such consideration may be particularly appropriate in the case of a defendant who shows signs of severe incapacity, in part because a judgment entered against a mentally incompetent defendant not represented by a guardian or a guardian ad litem may be subject to collateral attack at a later date. *See id.* at 385 n. 7. At the same time, the district judge should be aware that due process considerations attend an incompetency finding and the subsequent appointment of a guardian ad litem. *See Neilson v. Colgate–Palmolive Co.*, 199 F.3d 642, 651 (2d Cir.1999) (finding of incompetence made pursuant to Rule 17(c) must meet requirements of due process); *cf. Thomas v. Humfield*, 916 F.2d 1032, 1033–34 (5th Cir.1990) (holding that, under the circumstances, due process required that the district court conduct a hearing prior to appointment of guardian ad litem). In this case, had Judge Korman decided *sua sponte* to conduct an inquiry into Ferrelli's mental competency, such an inquiry would not have constituted an abuse of his discretion. Neither Rule 17(c) nor relevant precedent required him to conduct an inquiry, however, and we do not find that his failure to do so fell beyond the bounds of his wide discretion in this area.

## C. *Appointment of Counsel*

■ Ferrelli also contends that the magistrate judge and the district judge erred in denying her request for court-appointed counsel. The decision of whether to appoint counsel to a pro se litigant in a Title VII action is governed by 42 U.S.C. § 2000e–5(f)(1), which provides that "[u]pon application by the complainant and in such circumstances as the court may deem just, the court may appoint an attorney." District courts exercise substantial discretion in deciding whether to appoint counsel, subject to the principles we have set forth in *Hodge v. Police Officers:*

> In deciding whether to appoint counsel, ... the district judge should first determine whether the indigent's position seems likely to be of substance. If the claim meets this threshold requirement, the court should then consider the indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross-examination will be the major proof presented ..., the indigent's ability to present the case, the complexity of the legal issues and any special reason in that case why ap-

pointment of counsel would be more likely to lead to a just determination.

802 F.2d 58, 61–62 (2d Cir.1986).

On October 24, 2000, Magistrate Judge Gold denied Ferrelli's request for counsel, stating on the record that the "outer circumstances of [her] case ... don't raise the same likelihood of or indications of likely merit on the surface" and that "the circumstances of her case are not at first glance as compelling." He also commented that "[t]here isn't a prima facie showing here or circumstantial facts that warrant the appointment of counsel," and gave Ferrelli leave to renew her request following discovery, "if the case survives [a] dispositive motion." Although Ferrelli renewed the request on at least four other occasions—twice in communications received by Judge Korman—those requests were never addressed directly by either Magistrate Judge Gold or Judge Korman. Ferrelli contends that the magistrate judge erred by applying an incorrect standard to evaluate the likely merit of her claim. She further maintains that she satisfies all the criteria of the *Hodge* test, and hence that the magistrate judge and the district judge erred by refusing to appoint counsel.

We have stated in various ways the applicable standard for assessing the merits of a pro se litigant's claim. In *Hodge*, we noted that "[e]ven where the claim is not frivolous, counsel is often unwarranted where the indigent's chances of success are extremely slim," and advised that a district judge should determine whether the pro se litigant's "position seems likely to be of substance," or showed "some chance of success." *Hodge*, 802 F.2d at 60–61 (internal quotation marks and citation omitted). In *Cooper v. A. Sargenti Co.*, we reiterated the importance of requiring indigent litigants seeking appointed counsel "to first

pass the test of likely merit." 877 F.2d 170, 173 (2d Cir.1989) (per curiam).

We agree with Ferrelli that Magistrate Judge Gold's ruling denying the appointment of counsel appears to have raised the bar on the merits assessment above that of our precedent. Although his determination that Ferrelli's case did not have "indications of likely merit on the surface" was consistent with our holdings, his findings that Ferrelli did not make a "prima facie showing," and that her case was not "compelling" incorporated a more rigorous standard than any of the standards we have endorsed as a basis for determining whether a case shows sufficient merit to justify appointment of counsel. Similarly, Magistrate Judge Gold's statement that Ferrelli could renew her application "if the case survives [a] dispositive motion," suggests that he may have thought that survival of a dispositive motion was a critical factor in determining whether Ferrelli had made an adequate showing to warrant appointment of counsel. As we explained in *Hendricks v. Coughlin,* however, some meritorious, and hence counsel-worthy, cases "may fail to survive a dispositive motion." 114 F.3d 390, 392 (2d Cir.1997).

Based on the record before us, it is unclear whether the magistrate judge relied on the proper standard for determining whether Ferrelli's claim appeared sufficiently meritorious to warrant appointment of counsel. A more careful articulation of his reasoning would have greatly aided appellate review. Although we do not condone the insufficiencies of the magistrate judge's explanation for his determination that Ferrelli's claims lacked sufficient merit to warrant appointment of counsel, any error was harmless.

■ Based on our independent review of the record, we find that Ferrelli's case was not "likely to be of substance," *Hodge,*

802 F.2d at 61, and hence that appointment of counsel would have been inappropriate. Ferrelli made two assertions in support of her Title VII race-discrimination claim. First, she contended that non-white employees at River Manor "with more serious infractions were not terminated." Second, although she did not state as much in her complaint, during a pre-trial conference she appears to have relied on the fact that the individual who fired her—River Manor's director of nursing, Ms. Hardin—is African–American, in order to raise an inference of race discrimination, as is required to establish a prima facie case of race discrimination under Title VII. *See, e.g., Norville v. Staten Island Univ. Hosp.*, 196 F.3d 89, 95 (2d Cir.1999) (noting that to make a prima facie case of race discrimination under Title VII, a plaintiff must demonstrate that the adverse employment action in question "occurred under circumstances giving rise to an inference of discrimination.")

Ferrelli's assertion that "non-white" employees working for River Manor were not dismissed despite "more serious" infractions might have evidenced a likelihood of success had it been supported by specific allegations of such instances. *See id.* ("A plaintiff may support an inference of race discrimination by demonstrating that similarly situated employees of a different race were treated more favorably.") Although discovery may have helped Ferrelli support her claim, she could have rendered her allegations more plausible even without discovery by supplying details that corroborated what little record evidence existed. Moreover, Ferrelli's refusal to engage in discovery prevented her from obtaining any evidence to support her claim. Absent either evidence or more detailed allegations, she failed to demonstrate that her claim had sufficient merit to warrant appointment of counsel.

Second, the fact that the person who fired Ferrelli is African–American is, standing alone, insufficient to render her case a good candidate for appointed counsel. Ferrelli alleged that Ms. Hardin made the decision to fire her. However, River Manor asserted a plausible defense that several people were involved in the decision to fire Ferrelli, most of whom were white. In light of this explanation, more would be needed to warrant appointment of counsel.

Finally, Ferrelli relies on her successes before the Board and in her union grievance process to support her argument that defendant's explanations for her termination are pretextual and intended to obfuscate its racial motivation. However, the Board based its award of unemployment insurance on a finding that River Manor had relied on hearsay, not on a finding that River Manor's explanation for terminating Ferrelli was false. Moreover, although the union found that Ferrelli's termination was disproportionate to her alleged infractions, that fact alone—or even coupled with Ferrelli's allegations—does not render her claim "likely to succeed."

██ In sum, although Ferrelli's assertions could have conceivably survived a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), they were insufficient to warrant appointment of counsel. As we observed in *Cooper*, "mere bald assertions ... [that] technically put a fact in issue and suffice to avert summary judgment" are insufficient to provide a basis for appointment of counsel. 877 F.2d at 172. Although a pro se litigant is not always required to draft a complaint sufficient to survive a dispositive motion in order to warrant appointment of counsel, *see Hendricks*, 114 F.3d at 392, the converse is true as well. Simply because a complaint may survive a motion to dismiss or a motion for summary judgment

does not mean that a case warrants allocation of the scarce resource of volunteer-lawyer time. *See Cooper*, 877 F.2d at 172. We find Ferrelli's case unlikely to be meritorious, and therefore conclude that the district court did not err in failing to appoint counsel.

## CONCLUSION

For the foregoing reasons, we affirm the district court's judgment.