[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 09-11054
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPTEMBER 30, 2010
JOHN LEY
CLERK

D. C. Docket No. 06-22795-CV-JJO

LASCELLES GEORGE MCLEAN,
VIRGINIA MCLEAN,

Plaintiffs-Appellants,

versus

GMAC MORTGAGE CORPORATION,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(September 30, 2010)

Before HULL, WILSON and ANDERSON, Circuit Judges.

PER CURIAM:

Virginia and Lascelles McLean, proceeding *pro se*, appeal the district court's grant of summary judgment in favor of GMAC Mortgage Corporation ("GMAC") in their suit under the Real Estate Settlement and Procedures Act ("RESPA"), 12 U.S.C. § 2605. They argue, that the district court: (1) failed to address their claim that GMAC lacked "standing" to foreclose on their property because they transferred interest to Federal National Mortgage Association ("Fannie Mae"), and erred by not allowing them to amend their complaint to add Fannie Mae as an indispensable party; (2) erred by failing to appoint a guardian ad litem for Ms. McLean *sua sponte*; and (3) erred by granting summary judgment to GMAC on their RESPA claims.[1]

## I. BACKGROUND

The McLeans brought this action in federal court on November 14, 2006 after nearly ten years of legal disputes with GMAC concerning the mortgage on their house. There were numerous foreclosure actions and three separate bankruptcies.

---

[1] Although the McLeans asserted other claims below, which the court denied, they do not raise these claims on appeal, and, therefore, have abandoned them. *See Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008) (per curiam) (citation omitted) (holding that issues not briefed on appeal, even by a *pro se* litigant, are deemed abandoned). In addition, we are cognizant of the fact tha the mcLeans' brief was prepared *pro se* and we have construed the mcLeans' arguments liberally.

During the third bankruptcy GMAC sent a letter dated December 8, 2004 to the McLeans' bankruptcy trustee advising that the McLeans had not been current with their escrow payments as directed by the bankruptcy plan. As a result, the GMAC letter indicated that the McLeans' mortgage payments were going to be increased from $1,674.84 to $3,923.60, effective February 1, 2005. The McLeans responded with a letter to GMAC's Horsham, Pennsylvania address on December 15, 2004 explaining that they believed the escrow account to be current and requesting an explanation of GMAC's accounting of the escrow account. Upon failing to receive a response from GMAC, the McLeans sent a second letter on February 14, 2005 to GMAC's attorney which requested: (1) a detailed explanation for the increase in the mortgage payment; (2) the date when the delinquency in the escrow account began to accrue; (3) specific amounts of fines and penalties included in the delinquency; and (4) why GMAC failed to give the McLeans timely notice of their escrow delinquency.

GMAC responded on February 25, 2005 with a letter that briefly explained that the December 8 letter was a mistake, that the escrow account was never delinquent, and that the McLeans should disregard any increase in their mortgage payments. GMAC's letter did not address the McLeans' requests for information from their February 14 letter. The McLeans subsequently filed this complaint

3

which alleged several types of impropriety on the part of GMAC. The district court granted summary judgment in GMAC's favor on all the claims, except the RESPA claim. The McLeans then filed a pretrial contempt motion claiming that GMAC lacked standing because they had sold the McLeans' mortgage to Fannie Mae. The district court denied this motion and then granted summary judgment in GMAC's favor on the remaining RESPA claim because the McLeans failed to show how the alleged RESPA violations caused their injuries.

## II. DISCUSSION

*A.*     *The McLeans' Arguments With Regard to Standing are Immaterial and Were Raised in an Untimely Manner*

Although the McCleans are permitted to do so, this case illustrates the perils of self-representation in complex commercial litigation. The McLeans essentially brought suit against GMAC and then alleged that GMAC should not be a party to the lawsuit. Apparently, the McLeans were attempting to argue that GMAC lacked standing to bring the previous foreclosure actions. However, these arguments were made in an untimely manner in the wrong court. If the McLeans feel that GMAC did not have standing to foreclose on their home they should have sought to set aside the bankruptcy and foreclosure judgments in bankruptcy court. A contempt motion filed prior to a trial on RESPA violations was neither the time nor the place to address GMAC's standing to enforce the terms of their mortgage.

4

Contrary to the McLeans' assertion, the court did address their "standing" argument below, rightly concluding that it lacked any merit.  The district court appropriately instructed the McLeans at the pretrial conference in saying: "If you think you have the wrong party, if you would rather sue Fannie Mae, you are welcome to do that."  Doc. 219 at 12.  Because GMAC, as the defendant, did not file a counterclaim and did not complain of an injury, the standing requirements are inapplicable.

B.    *The District Court Did Not Err in Failing to Appoint a Guardian ad Litem For Ms. McLean*

The McLeans argue on appeal, for the first time, that the district court should have appointed a guardian ad litem for Ms. McLean.  The McLeans did not request a guardian ad litem previously, but now assert that the district court was under an obligation to *sua sponte* appoint one.

"It is well established that the appointment of a guardian ad litem is a procedural question controlled by Rule 17(c) of the Federal Rules of Civil Procedure."  *Burke v. Smith*, 252 F.3d 1260, 1264 (11th Cir. 2001) (quotation omitted).  "Rule 17(c) does not make the appointment of a guardian ad litem mandatory.  If the court feels that the [person's] interests are otherwise adequately represented and protected, a guardian ad litem need not be appointed."  *Roberts v.*

5

*Ohio Cas. Ins. Co.*, 256 F.2d 35, 39 (5th Cir. 1958) (per curiam).[2] The district court's decision as to whether to appoint a guardian ad litem is reviewed for abuse of discretion. *See Ferrelli v. River Manor Health Care Center*, 323 F.3d 196, 200 (2d Cir. 2003)

The McLeans never asserted before the district court that Ms. McLean was not competent to proceed to trial and never requested a guardian ad litem to represent her. "Neither the language of Rule 17(c) nor the precedent of [the Second Circuit] or other circuits imposes upon district judges an obligation to inquire *sua sponte* into a pro se plaintiff's mental competence, even when the judge observes behavior that may suggest mental incapacity." *Ferrelli*, 323 F.3d at 201. In any case, there is insufficient evidence in the record that would alert the district court to any issue regarding Ms. McLean's competence. The McLeans did request several continuances to allow Ms. McLean to recover from psychological stress. However, psychological and mental stress is not the equivalent of incompetence to proceed in court. The court transcripts show that Ms. McLean understood the proceedings and was capable of protecting her interests. Furthermore, Mr. McLean

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this Court adopted as binding precedent all decisions of the former Fifth Circuit issued before October 1, 1981.

was a party to the suit.  Therefore, the district court did not err by not appointing a guardian ad litem *sua sponte*.

*C.     The District Court Did Not Err in Granting Summary Judgment to GMAC for the McLeans' RESPA Claims*

We review a district court's grant of summary judgment *de novo*, viewing all evidence and drawing all reasonable inferences in favor of the non-moving party. *Galvez v. Bruce*, 552 F.3d 1238, 1241 (11th Cir. 2008).  Summary judgment is appropriate where the record presents no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  *Swisher Int'l, Inc. v. Schafer*, 550 F.3d 1046, 1050 (11th Cir. 2008), *cert. denied*, 130 S. Ct. 71 (2009).  "Mere conclusions and unsupported factual allegations are legally insufficient" to defeat a summary judgment motion.  *Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560, 1563 (11th Cir. 1989).

RESPA prescribes certain actions to be followed by entities or persons responsible for servicing federally related mortgage loans, including responding to borrower inquires.  *See* 12 U.S.C. § 2605.  Pursuant to § 2605(e), a loan servicer, upon receipt of a qualified written request, must provide "a written response acknowledging receipt of the correspondence" within 20 business days.  *Id.* § 2605(e)(1)(A).  RESPA further requires that, within 60 business days of receipt of a qualified written request, the servicer must: (1) make appropriate corrections

in the account of the borrower and transmit a written notification of such correction; (2) after conducting an investigation, provide the borrower with a written explanation that includes a statement of the reasons for which the servicer believes the account is correct, and the name and telephone number of an employee or department that can provide further assistance; or (3) after conducting an investigation, provide the borrower with a written explanation that includes the information requested by the borrower or an explanation of why the information requested is unavailable, along with the name and telephone number of an employee or department that can provide further assistance. *Id.* § 2605(e)(2).

If a loan servicer fails to comply with any of these provisions, an individual borrower may recover any actual damages caused by the failure, and up to $1,000 in statutory damages if there is a pattern or practice of noncompliance with RESPA. *Id.* § 2605(f). Although we have not specifically defined "actual damages" within the meaning of § 2605(f)(1)(A), we have held that RESPA is a consumer protection statute. *See Hardy v. Regions Mortg., Inc.*, 449 F.3d 1357, 1359 (11th Cir. 2006). Consequently, RESPA is to be "construed liberally in order to best serve Congress' intent." *Ellis v. Gen. Motors Acceptance Corp.*, 160 F.3d 703, 707 (11th Cir. 1998) (addressing the remedial nature of the Truth in Lending Act ("TILA")).

Construing the term "actual damages" broadly, and based on the interpretations of "actual damages" in other consumer-protection statutes that are remedial in nature, plaintiffs arguably may recover for non-pecuniary damages, such as emotional distress and pain and suffering, under RESPA. *See, e.g.*, *Banai v. Sec'y, U.S. Dep't of Hous. & Urban Dev. ex rel. Times*, 102 F.3d 1203, 1207 (11th Cir. 1997) (the Fair Housing Act allowance for "actual damages" includes anger, embarrassment, and emotional distress). Nevertheless, the McLeans must present specific evidence to establish a causal link between the financing institution's violation and their injuries. *See Turner v. Beneficial Corp.*, 242 F.3d 1023, 1027–28 (11th Cir. 2001) (en banc) (requiring a causal link for TILA claims). In some circumstances, we have held that a plaintiff's testimony alone could support an award of compensatory damages for emotional distress. *Akouri v. Fla. Dep't of Transp.*, 408 F.3d 1338, 1345 (11th Cir. 2005) (concerning constitutional violations). However, "the testimony must establish that the plaintiff suffered demonstrable emotional distress, which must be sufficiently articulated; neither conclusory statements that the plaintiff suffered emotional distress nor the mere fact that a . . . violation occurred supports an award for compensatory damages." *Id.* (quotation omitted).

Here, even if we assume *arguendo*, as the district court did, that GMAC committed two RESPA violations, we still find that the McLeans offered no competent evidence demonstrating that any of their alleged injuries were caused by the said violations. In sum, the McLeans' conclusory allegations were insufficient to support a claim of emotional distress.

## IV. CONCLUSION

The McLeans are free to address any possible issues concerning GMAC's standing to foreclose on their home in the proper venue. However, for the purposes of the RESPA claim we find that GMAC was the appropriate party, but that the McLeans were unable to articulate any specific injury that was caused by GMAC's failure to respond to their request for information. Further, Ms. McLean was capable of handling her affairs without the aid of a guardian ad litem, especially in light of the fact that Mr. McLean was a party to the suit. Therefore, we affirm the summary judgment of the district court.

**AFFIRMED.**