*Romano v. Laskowski*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 31st day of October, two thousand twenty-four.

Present:
> DEBRA ANN LIVINGSTON,
> *Chief Judge*,
> MYRNA PÉREZ,
> ALISON J. NATHAN,
> *Circuit Judges*.

_____

ANTHONY ROMANO,

> *Plaintiff-Appellant*,

> v.                                                    22-1896

STEPHEN LASKOWSKI, BARBARA LAHRS, Nurse Practitioner, SANDRA MICHALEK, Nurse Administrator, DR. DAVID WILLIAMS, Facility Health Director,

> *Defendants-Appellees*.

_____

For Plaintiff-Appellant:               ALEXANDRA PILLA AND NATALIE R. KENNY, Rule 46.1(e) Law Students (Steven M. Fasciale, Patrick Maley, Rule 46.1(e) Law Students, *on the brief*), Jonathan Romberg, *of Counsel*, Seton Hall University School of Law Center for Social Justice, Newark, NJ.

For Defendants-Appellees:          JOSEPH M. SPADOLA, Assistant Solicitor General, *of Counsel* (Barbara D. Underwood, Solicitor General, Andrea Oser, Deputy Solicitor General, *on the brief*), *on behalf of* Letitia James, Attorney General, State of New York, New York, NY.

Appeal from a judgment of the United States District Court for the Western District of New York (Sinatra, Jr., *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **VACATED,** and the case is **REMANDED** for further proceedings.

Plaintiff-Appellant Anthony Romano ("Romano") appeals from a judgment of the United States District Court for the Western District of New York (Sinatra, Jr., *J.*) granting Defendants-Appellees' motion to dismiss under Federal Rule of Civil Procedure ("Rule") 41(b) without prejudice to renewal. Adopting Magistrate Judge Michael J. Roemer's report and recommendation, the district court dismissed Romano's case for failure to prosecute after he refused on two occasions to submit to deposition, despite a court order directing him to do so. Romano raises two challenges on appeal. First, he argues that the district court, in declining to appoint a guardian ad litem, failed to fulfill its duty under Rule 17(c) to inquire into Romano's competence. Second, he contends that the district court erred in dismissing his case under Rule 41(b) without (1) having found that Romano acted with willfulness, bad faith, or reasonably serious fault, or (2) considering the availability of less severe sanctions. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

We review a district court's decision as to whether to appoint a guardian ad litem under Rule 17(c) for abuse of discretion. *Ferrelli v. River Manor Health Care Ctr.*, 323 F.3d 196, 200 (2d Cir. 2003). We also review for abuse of discretion a district court's dismissal of a case under

2

Rule 41(b). *Lewis v. Rawson*, 564 F.3d 569, 575 (2d Cir. 2009). A district court abuses its discretion when its decision "rests 'on an error of law . . . or a clearly erroneous factual finding,' or when its ruling 'cannot be located within the range of permissible decisions.'" *Id.* (quoting *Wynder v. McMahon*, 360 F.3d 73, 76 (2d Cir. 2004)).

**I. Rule 17(c) Duty of Inquiry**

Under Rule 17(c), a court "must appoint a guardian ad litem—or issue another appropriate order—to protect a minor or incompetent person who is unrepresented in an action." Fed. R. Civ. P. 17(c)(2). This obligation arises only after a determination of incompetence; however, Rule 17(c) provides no guidance regarding the circumstances under which an inquiry into a party's competence is required. *Ferrelli*, 323 F.3d at 201. In *Ferrelli*, we identified two circumstances in which failing to conduct such an inquiry "likely would be an abuse of the court's discretion": (1) "If a court were presented with evidence from an appropriate court of record or a relevant public agency indicating that the party had been adjudicated incompetent, or" (2) "if the court received verifiable evidence from a mental health professional demonstrating that the party is being or has been treated for mental illness of the type that would render him or her legally incompetent." *Id.* On the other hand, we held that, "[s]tanding alone, . . . a litigant's bizarre behavior is insufficient to trigger a mandatory inquiry into his or her competency." *Id.* at 202. In setting forth this standard, we sought to balance "the need to protect the rights of the mentally incompetent" against the "potential burden on court administration associated with conducting frequent inquiries into pro se litigants' mental competency." *Id.* at 201.

The parties have not presented evidence of a proceeding in which Romano was "adjudicated incompetent." *Id.* Their dispute thus focuses on the second type of evidence identified in *Ferrelli*. The district court concluded that the record lacked "verifiable evidence

3

indicating that Plaintiff's mental illness is of the type that would render him legally incompetent." A-209 (citing *Ferrelli*, 323 F.3d at 201). We agree.

In arguing to the contrary, Romano points to two categories of evidence: (1) his own assertions regarding his diagnosis and treatment for serious mental illness, and (2) prison documentation showing his Office of Mental Health ("OMH") Level 1S classification[1] and his placement in the Intensive Intermediate Care Program[2] ("IICP"). As the district court concluded, this evidence may suggest that Romano "almost certainly suffers from some degree of mental illness." A-209. But the record speaks only to mental illness—not incompetence. And

---

[1] The New York Department of Corrections and Community Supervision ("DOCCS") defines Office of Mental Health (OMH) Level 1 classification as follows: "Seriously mentally ill ["SMI"] individual and/or requires on-site, dedicated staff from an outpatient clinic with the highest level of mental health services available." DOCCS Directive No. 9230, Mental Health Specialized Supervision Standards 1 (Oct. 14, 2020), https://nyscopba.org/wp-content/uploads/2019/10/dir9230.pdf [https://perma.cc/APT7-C8VJ]. DOCCS classifies as Level 1S "[i]ndividuals who have been designated SMI due to possessing one or more of" a list of diagnoses that includes Schizophrenia, Major Depressive Disorder, Bipolar Disorder, Delusional Disorder, or any mental condition "characterized by breaks with reality resulting in functional impairments involving acts of self-harm or other behavior that have a serious adverse effect on life, mental and physical health"—or that are "actively suicidal or ha[ve] engaged in a recent serious suicide attempt." *Id.* at 1–2.

[2] DOCCS defines the Intermediate Care Program ("ICP") as "a residential mental health program for SMI inmate-patients jointly operated by DOCCS and OMH. The ICP is a therapeutic community which provides rehabilitative services to inmate-patients who are unable to function in general population because of their mental illness. The goal of the program is to improve the inmate-patient's ability to function through programming and treatment so that they may return to general population." DOCCS Bureau of Mental Health, Mental Health Program Descriptions 1 (July 5, 2011), https://www.op.nysed.gov/sites/op/files/surveys/mhpsw/doccs-att6.pdf [https://perma.cc/6VPL-PJJ9]. It defines the Intensive Intermediate Care Program ("IICP") as "a residential mental health program for SMI inmate-patients with long-term keeplock and/or inmate-patients who require alternate placement from other ICPs due to poor disciplinary/poor adjustment in correctional facilities. Staffing and programming are similar to other ICPs with additional groups centering on increasing an inmate-patient's behavioral control and future adjustment to the correctional environment." *Id.*

there is no "necessary relationship" between the two.  *See Ferrelli*, 323 F.3d at 203 (quoting *Hudnall v. Sellner*, 800 F.2d 377, 385 (4th Cir. 1986)).

This case parallels in many respects *Crispin v. Rodriguez*, No. 21-883, 2023 WL 1113536 (2d Cir. Jan. 31, 2023) (summary order).   In *Crispin*, while the district court "did receive medical records detailing [Crispin's] serious mental health issues," we concluded that a Rule 17(c) duty of inquiry had not been triggered because "none of these records indicated doubts about Crispin's competency nor recommended appointment of a guardian ad litem."   *Crispin*, 2023 WL 1113536, at *3.   So too here.   Indeed, the evidence here falls short even of that in *Crispin*—in this case, the prison documentation indicates only Romano's OMH Level 1S classification and IICP placement.   It provides no additional information regarding Romano's specific mental health issues.   And Romano's own assertions regarding his diagnosis and treatment do not constitute "evidence from a mental health professional."   *Ferrelli*, 323 F.3d at 201.

The Third Circuit's analysis in *Powell v. Symons*, 680 F.3d 301 (3d Cir. 2012), reinforces this conclusion.   In *Powell*, that court adopted and applied *Ferrelli* to conclude that a Rule 17(c) duty of inquiry had been triggered based on a letter from the litigant's psychiatrist, which stated that she did "not feel he [was] competent at this time to represent himself in court," and recommended "that he be given a public defender."[3]   *Powell*, 680 F.3d at 309.   The court found that this letter constituted "verifiable evidence from a mental health professional of an unrepresented litigant's incompetence."   *Id.* at 310.   The record here, by contrast, contains no such evidence of *incompetence*.

---

[3]  The full letter reads as follows: "To Whom It May Concern: Mr. Detlef Hartmann is under my care for Major Depression and Attention Deficit Disorder. I do not feel he is competent at this time to represent himself in court. I would recommend that he be given a public defender, if at all possible."  *Powell*, 680 F.3d at 309.

5

Romano next argues that *Ferrelli*'s requirement should be relaxed for incarcerated pro se litigants. We need not decide in this case whether such variance may ever be warranted, as Romano has failed to establish that he faced unique obstacles to obtaining medical documentation, above and beyond those faced by non-incarcerated pro se litigants. Indeed, Romano obtained and attached several medical records to his amended complaint, including documentation of his OMH Level 1S classification and IICP placement. A-42–88. And as the district court noted, Romano was recently represented by appointed counsel in two other cases. A-209 n.4 (citing *Romano v. Lisson*, No. 16-CV-81 (W.D.N.Y. filed Feb. 1, 2016); *Romano v. Salotti*, No. 17-CV-465 (W.D.N.Y. filed May 25, 2017)). His counsel presumably had the opportunity to raise and investigate competence concerns, including seeking out relevant medical documentation, but they do not appear to have done so.

As a result, the district court had no Rule 17(c) duty to inquire into Romano's competence in this case. It thus did not abuse its discretion in declining to appoint a guardian ad litem.

## II. Rule 41(b) Dismissal without Prejudice

Under Rule 41(b), "[i]f the plaintiff fails to prosecute or to comply with [the Federal Rules of Civil Procedure] or a court order, a defendant may move to dismiss the action or any claim against it." Fed. R. Civ. P. 41(b). We have emphasized that dismissal is generally a "'harsh remedy' that should 'be utilized only in extreme situations.'" *Lewis*, 564 F.3d at 576 (citation omitted). And a pro se litigant's claim, in particular, "should be dismissed for failure to prosecute 'only when the circumstances are sufficiently extreme.'" *Baptiste v. Sommers*, 768 F.3d 212, 217 (2d Cir. 2014) (per curiam) (citation omitted).

We have identified five factors for a district court to weigh in determining whether dismissal is appropriate: "(1) the duration of the plaintiff's failure to comply with the court order,

6

(2) whether plaintiff was on notice that failure to comply would result in dismissal, (3) whether the defendants are likely to be prejudiced by further delay in the proceedings, (4) a balancing of the court's interest in managing its docket with the plaintiff's interest in receiving a fair chance to be heard, and (5) whether the judge has adequately considered a sanction less drastic than dismissal." *Lucas v. Miles*, 84 F.3d 532, 535 (2d Cir. 1996). "No one factor is dispositive," and we "review the dismissal in light of the record as a whole." *United States ex rel. Drake v. Norden Sys., Inc.*, 375 F.3d 248, 254 (2d Cir. 2004). Before dismissing a case, a district court must also make a finding of "willfulness, bad faith, or reasonably serious fault" by evaluating the factors. *Baptiste*, 768 F.3d at 217 (citation omitted).

In this case, the magistrate judge assessed the five factors and found that each supported dismissal of Romano's case. However, the magistrate judge also concluded that it was "difficult for the Court to determine whether Plaintiff's refusal to be deposed was truly willful, based on lack of interest in this case, or directly related to mental illness." A-209. As a result, the magistrate judge recommended dismissal "without prejudice to renewal." *Id.* The parties dispute two issues: (1) whether the district court was required—and failed—to make a finding of willfulness, bad faith, or reasonably serious fault before dismissing the case; and (2) whether the district court adequately considered less severe sanctions than dismissal.

On the first issue, our precedent is clear that before dismissing a case *with* prejudice under Rule 41(b), a district court must make a finding of "willfulness, bad faith, or reasonably serious fault." *Baptiste*, 768 F.3d at 217 (citation omitted). But we have not yet ruled in a precedential opinion that dismissals *without* prejudice require such a finding. We declined to decide this question in *Sanchez v. County of Dutchess*, No. 21-2408, 2023 WL 3047971, at *1 (2d Cir. Apr. 24, 2023) (summary order), as we vacated the district court's dismissal on other grounds. *Id.*

7

But in *Peters v. CBS Viacom*, No. 23-463, 2023 WL 8270781, at *2 (2d Cir. Nov. 30, 2023) (summary order), another case involving a Rule 41(b) dismissal without prejudice, we presumed that a finding of "willfulness, bad faith, or reasonably serious fault" would be required. *Id.* (quoting *Baptiste*, 768 F.3d at 217).

We need not resolve the question here, however, as the dismissal without prejudice in this case would operate in effect as a dismissal with prejudice. We have treated a dismissal without prejudice as akin to a dismissal with prejudice where "the statute of limitations has run on most, if not all, of [the plaintiff's] various causes of action." *Wynder*, 360 F.3d at 76; *see also Gowrie v. Eevelle, LLC*, No. 22-1831, 2023 WL 4246804, at *2 (2d Cir. June 29, 2023) (summary order) ("[W]here, as here, the statute of limitations has expired, a dismissal without prejudice may effectively operate as a dismissal with prejudice to the plaintiff."). And other courts have taken a similar approach. *See, e.g.*, *Coleman v. Sweetin*, 745 F.3d 756, 766 (5th Cir. 2014); *Mickles v. Country Club Inc.*, 887 F.3d 1270, 1280 (11th Cir. 2018).

The applicable statute of limitations here is three years. *Shomo v. City of New York*, 579 F.3d 176, 181 (2d Cir. 2009). And in this case, a dismissal without prejudice would not toll the limitations period. *See Jewell v. Cnty. of Nassau*, 917 F.2d 738, 740–41 (2d Cir. 1990). Therefore, because Romano's original and amended complaints allege incidents that occurred in 2018, dismissal of these claims without prejudice would appear to render them time-barred.

In arguing to the contrary, Defendants-Appellees point to the fact Romano represented to this Court in February 2023 that the alleged denial of medical care forming the basis for his Eighth Amendment claim remained ongoing. Appellees' Br. at 41 (citing 2d Cir. Doc. No. 62). Defendants-Appellees thus suggest Romano's claims may not be foreclosed by the three-year

statute of limitations, because he could potentially allege a continuing violation. *Id.* (citing *Shomo*, 579 F.3d at 181).

Yet such speculation as to the possibility a plaintiff might be able to allege a continuing violation premised in part on the same underlying conduct does not negate the fact that a dismissal without prejudice "would likely prove fatal to [Romano's] claims." *Wynder*, 360 F.3d at 76. Indeed, to allege a continuing violation against the specific defendants in this case, Romano would have to "allege acts involving [those defendants] that fall within the three-year statutory period." *Shomo*, 579 F.3d at 183; *see also Lucente v. Cnty. of Suffolk*, 980 F.3d 284, 309–10 (2d Cir. 2020). No evidence in the record suggests Romano could do so here.

Because the dismissal without prejudice here operated in effect as a dismissal with prejudice, the district court was required to make a finding of "willfulness, bad faith, or reasonably serious fault." *Baptiste*, 768 F.3d at 217 (citation omitted); *see also Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1065–66 (2d Cir. 1979) (requiring a similar finding of fault in the analogous context of a Rule 37(b) sanction, where the sanction was "tantamount to a dismissal of [the plaintiff's] damage claim"). It did not do so.

Additionally, the district court did not adequately consider whether sanctions "less drastic than dismissal" would be effective. *Lucas*, 84 F.3d at 535. "Failure to consider a lesser sanction than dismissal is generally an abuse of discretion." *Shepherd v. Annucci*, 921 F.3d 89, 98 (2d Cir. 2019); *see Dodson v. Runyon*, 86 F.3d 37, 39 (2d Cir. 1996) ("The remedy [of dismissal] is pungent, rarely used, and . . . [a] district judge should employ it only when he is sure of the impotence of lesser sanctions." (citation omitted)). While the sanction the district court imposed—dismissal without prejudice—is generally considered less severe than dismissal with prejudice, *see Sanchez*, 2023 WL 3047971, at *2, the dismissal here effectively operated as one

with prejudice, *see Gowrie*, 2023 WL 4246804, at *2. The district court did conclude that it was "unlikely that lesser sanctions would be effective," because Romano had "plainly refused to submit to deposition and ha[d] failed to abide by a Court order directing his participation." A-207–08. However, this conclusion may have been premised on the district court's understanding that dismissal without prejudice was a less severe sanction than dismissal with prejudice in this case.

We therefore remand to the district court to reconsider in the first instance both (1) whether Romano's conduct constituted "willfulness, bad faith, or reasonably serious fault," *Baptiste*, 768 F.3d at 217 (citation omitted), and (2) whether other sanctions may have been effective.

\*     \*     \*

We have considered Romano's remaining arguments and find them to be without merit. Accordingly, we **VACATE** the judgment of the district court and **REMAND** for further proceedings consistent with this order.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

10